STATE, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO., APPELLANT.

(No. 2,524.)

(Submitted February 18, 1908.   Decided February 25, 1908.)

[93 Pac. 945.]

*Railroads—Interstate Commerce—Regulation of Hours of Labor —Power of Legislature—Statutes.*

Railroads—Interstate Commerce—Regulating Hours of Labor—Power of Legislature—Constitution.

1.   In the absence of legislation by Congress on the matter of regulating the hours of labor, etc., of certain railway employees in this state, even though engaged in interstate commerce, such regulation was a matter of state control under the exercise of its police power; hence the Act of February 5, 1907 (Laws 1907, p. 6), making such provision and providing penalties for violation thereof, was not an attempt to regulate interstate commerce in contravention of the federal Constitution.

Same—Federal and State Statutes on Same Subject—Effect.

2.   The Act of February 5, 1907 (Laws 1907, p. 6), regulating the hours of labor, etc., of certain railway employees in this state was not rendered inoperative by the enactment of a similar statute by Congress, approved March 4, 1907, which, however, was not to become effective until March 4, 1908; but, in the absence of any declaration by Congress indicating the intention to at once supersede existing state legislation on the subject, the state law remained in full force until the federal Act went into effect.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by the state of Montana against the Northern Pacific Railway Company. From a judgment for plaintiff, and an order denying it a new trial, defendant appeals. Affirmed.

*Mr. R. F. Gaines, Mr. J. G. Brown,* and *Mr. Wm. Wallace, Jr.,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant is a corporation, organized under the laws of the state of Wisconsin, and is engaged in operating a line of railroad from a point on the shore of Lake Superior, through Montana and other states, to a point on the shore of Puget Sound. In the conduct of its business as a common carrier it transports passengers and freight from points without to points within the state of Montana, from point to point within the state, and from points within to points without the state. On January 9, 1908, the attorney general filed an information in the district court of Lewis and Clark county, charging, in substance, that on or about December 30, 1907, the defendant, while engaged in the transportation of freight in the usual course of its business in said county, did willfully, intentionally, and unlawfully permit and require certain of its employees, being its engine and train crews in charge of one of its freight trains, to labor in the operation thereof for more than sixteen consecutive hours, to-wit, for twenty-three consecutive hours, there being no particular occasion by reason of accident, storm, wreck, washout, unavoidable delay, or other like cause, permitting or requiring said employees to so labor. The charge was preferred

under the provisions of the Act of the Tenth Legislative Assembly, approved February 5, 1907 (Laws 1907, p. 6), entitled, "An Act to regulate the hours of labor of locomotive engineers, locomotive firemen, conductors, trainmen, operators and agents acting as operators, and to provide penalties and civil liabilities for the violation thereof." To the information the defendant interposed a general demurrer. This having been disallowed, it entered its plea of not guilty. At the trial counsel submitted an agreed statement of facts, embodying substantially the allegations in the information. The defendant was found guilty, and was sentenced to pay a fine. It has appealed from the judgment and an order denying it a new trial.

It is not questioned that the information is sufficient, in form and substance, to state an offense, if the statute is a valid exercise of legislative power. The contention is that the judgment cannot be sustained because the legislation is invalid, in that (1) it is an attempt to regulate interstate commerce, the power to do which is vested by the federal Constitution exclusively in the Congress of the United States; and (2), even though it was a valid exercise of power at the time of its enactment, it became invalid and inoperative upon the passage of the Act of Congress, approved March 4, 1907, dealing with the same subject. (34 Stats. at Large, 1415.)

Section 1 of the Act declares: "On all lines of steam railroads or railways operated in whole or in part within this state the time of labor of locomotive engineers, locomotive firemen, conductors, trainmen, operators and agents acting as operators, employed in running or operating the locomotive engines or trains on or over such railroads or railways in this state, shall not at any time exceed sixteen (16) consecutive hours or to be on duty for more than sixteen (16) hours in the aggregate in any twenty-four (24) hour period. At least eight (8) hours shall be allowed them off duty before said engineers, firemen, conductors, trainmen, operators and agents acting as operators, are again ordered or required to go on duty; provided, however, that nothing in this section shall be construed to allow any

engineer, fireman, conductor or trainman to desert his locomotive or train in case of accident, storms, wrecks, washouts, snow blockade or any unavoidable delay arising from like causes, or to allow said engineer, fireman, conductor or trainman to tie up any passenger or mail train between terminals." Section 2 prescribes penalties and imposes civil liabilities for violations of these provisions. Section 4 repeals conflicting legislation, and section 5 declares the Act immediately operative.

1. Upon the first proposition the argument is that the grant of power to Congress under the federal Constitution "to regulate commerce * * * among the several states * * * " is exclusive; and since the defendant is, and at the time the alleged offense was committed was, engaged in interstate commerce, and the Act in question assumes to impose burdens and restrictions upon it in the transaction of its business in this connection, as well as upon that done exclusively between points within the state, the Act is the result of an unwarranted assumption of power by the legislature.

The purpose of the legislature in the enactment of this statute was to secure better service at the hands of all persons operating lines of railroad within or through this state, and at the same time to promote the safety of the lives and property intrusted to them. It is apparent to everyone that a continuance beyond a reasonable time each day in the performance of the exacting duties incident to an employment that is always attended with danger tends to impair both the health and efficiency of employees, and should not be permitted except in cases of necessity. The legislature was seeking, then, by an exercise of the police power of the state, not only to serve the general welfare of the public, but also to preserve the lives and health of all persons employed in, or having direct connection with, the running of trains. Now, the police power is inherent in the several states. It remains with them notwithstanding the grant of power by them to the federal government, and may be exercised by their several legislatures upon all matters coming within its purview, without limitation or restriction. (*Lake*

*Shore & Michigan Southern Ry. Co.* v. *Ohio,* 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702; *Hennington* v. *Georgia,* 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; 22 Am. & Eng. Ency. of Law, 2d ed., 919.) When, however, the state undertakes to legislate upon the general subject of commerce, the distinction between what is local and what is national in character must be kept in mind.

In *Covington etc. Bridge Co.* v. *Kentucky,* 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, the supreme court of the United States distinguishes the subjects of legislation in this connection into three classes: (1) Those over which the power of the state is exclusive; (2) those in which the state may act in the absence of legislation by Congress; and (3) those over which the power of Congress is exclusive, and the state cannot interfere at all. It is pointed out that in the first class fall many subjects of legislation which may affect interstate commerce indirectly, but their bearing upon it is of a local character so remote that they cannot be deemed in any just sense an interference. In the second class are embraced laws for the regulation of pilots employed upon navigable rivers over which the federal government has jurisdiction; quarantine and inspection laws and the policing of harbors; the improvement of navigable channels; the regulation of wharfs, piers, and docks; the construction of dams and bridges across navigable streams and the establishment of ferries. Citing and quoting with approval from the decision in *Cooley* v. *Philadelphia Port Wardens,* 12 How. (U. S.) 299, 13 L. Ed. 996, the conclusion is announced that on all these subjects the states are free to legislate, so long as the effect is to control matters local in character only, until Congress chooses to act, though such legislation indirectly affects commerce with foreign nations and between the states. In the third class fall all those subjects of legislation which are not local in their nature, and do not affect interstate commerce incidentally only, but are national in their character. Over all such subjects Congress has exclusive power, and, in so far as

it refrains from acting upon them, it indicates its will that in these respects commerce shall be free from regulation.

In the case of *Cooley* v. *Philadelphia Port Wardens,* one of the questions decided was whether an Act of the legislature of Pennsylvania, regulating pilots and pilotage, was repugnant to the commerce clause of the Constitution. It was held that, though Congress had the power to deal with the subject, the mere grant of the power did not amount to a denial of it to the state, and hence that the Act was valid until it should be superseded by an Act of Congress.

Statutes like the one before us, have often been drawn in question before the courts, and they have invariably been held valid by the highest court of last resort, except when they were clearly unreasonable interferences with interstate commerce. Cases holding such laws valid are collected by Mr. Justice Brown, in *Cleveland, C. C. & St. L. Ry. Co.* v. *Illinois,* 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868, who makes the following summary: "We have recently applied this doctrine to state laws requiring locomotive engineers to be examined and licensed by the state authorities (*Smith* v. *Alabama,* 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508); requiring such engineers to be examined from time to time with respect to their ability to distinguish colors (*Nashville etc. Ry.* v. *Alabama,* 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352); requiring telegraph companies to receive dispatches and to transmit and deliver them with due diligence, as applied to messages from outside the state (*Western Union Tel. Co.* v. *James,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105); forbidding the running of freight trains on Sunday (*Hennington* v. *Georgia,* 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166); requiring railway companies to fix their rates annually for the transportation of passengers and freight, and also requiring them to post a printed copy of such rates at all their stations (*Railway Co.* v. *Fuller,* 17 Wall. 560, 21 L. Ed. 710); forbidding the consolidation of parallel or competing lines of railway (*Louisville & Nashville R. R.* v. *Kentucky,* 161 U. S. 677, 16 Sup. Ct. 714, 40 L. Ed. 849); regulating the heat-

ing of passenger-cars, and directing guards and guard-posts to be placed on railroad bridges and trestles and the approaches thereto (*New York etc. R. R. Co.* v. *New York*, 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853) ; providing that no contract shall exempt any railroad corporation from the liability of a common carrier or a carrier of passengers which would have existed if no contract had been made (*Chicago etc. Ry.* v. *Solan*, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688) ; and declaring that, when a common carrier accepts for transportation anything directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless at the time of such acceptance such carrier be released or exempted from such liability by contract in writing, signed by the owner or his agent (*Richmond & Allegheny R. R.* v. *Patterson Tobacco Co.*, 169 U. S. 311, 18 Sup. Ct. 335, 42 L. Ed. 759). In none of these cases was it thought that the regulations were unreasonable, or operated in any just sense as a restriction upon interstate commerce.''

In the Illinois case, a statute requiring railway companies to stop all trains at all county seats was held to be direct interference with interstate commerce, and therefore unconstitutional, but the Ohio case (*Lake Shore & Michigan Southern Ry. Co.* v. *Ohio, supra*) is distinguished and the result approved. Among the numerous decisions by this court some are found which seem to be out of line with others, but generally the rule has been observed that upon all such subjects, if Congress has not acted, the states are free to legislate, so long as they seek to promote the public safety and convenience, and do not undertake to hamper unnecessarily or substantially control the agencies of interstate commerce in the conduct of their business. In *Lake Shore & Michigan Southern Ry. Co.* v. *Ohio, supra*, a statute of Ohio requiring each railway company to stop three of its trains, going each way, daily except Sundays, at all stations, cities, or villages containing over three thousand inhabitants, to receive and let off passengers, was upheld on the

ground that it was a proper exercise of police power by the
state, and, though the decision was by a divided court, the doc-
trine of the cases cited by Mr. Justice Brown, in *Cleveland, C.,
C. & St. L. Ry. Co.* v. *Illinois,* was approved. In this connec-
tion the case of *Hennington* v. *Georgia* is also in point, though
it is disapproved by the dissenting justices in the Ohio case.

On principle, we cannot distinguish between the effect of a
statute such as that of the state of Alabama, which was con-
sidered in *Smith* v. *Alabama,* 124 U. S. 465, 8 Sup. Ct. 564, 31
L. Ed. 512, and the one here involved. In that case, in order
to secure the maximum of efficiency in railroad engineers, they
were required to submit themselves to an examination to test
their mechanical skill and knowledge, and to be licensed by a
competent board of examiners, before they could be employed
by any railway company. An additional requirement was that
they must be men of careful and temperate habits. The stat-
ute in question applied generally to the business of railroads,
without making any distinction between that which was strictly
interstate commerce and that which was commerce within the
state exclusively. So in *Nashville C. & St. L. Ry. Co.* v. *Ala-
bama,* 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352, and for the
same reason, all employees having charge of or directly con-
nected with the operation of trains were required to submit
themselves from time to time to examination to test their abil-
ity to distinguish color signals, and to obtain a license certify-
ing to their efficiency in this regard, before they could enter
or continue in the service of any railroad operating in the state.

The mechanical efficiency or personal habits of engineers, or
their capacity or that of other railway employees to distinguish
colors, and hence their greater efficiency in the business of hand-
ling trains, does not more nearly concern the public safety than
does the necessity for sleep and rest, in order that they may
have full possession of their mental powers and physical strength
to aid them in the performance of their responsible duties. Nor
does the requirement in the one case more seriously interfere
with or restrain commerce than in the other. In all such cases

an additional burden is imposed upon the railroad corporation, and to the extent of this additional burden there is an interference with the conduct of its business.

The cases cited, it seems to us, are conclusive; and, while we think it properly conceded that the subject, so far as it affects interstate commerce, falls within the power of federal legislation under the Constitution, yet, in the absence of such legislation on the subject, it is a matter for state control, under the exercise of its police power, to provide for the public safety and also for the health and lives of railroad employees themselves.

2. It remains to inquire whether the law is still operative, notwithstanding the Act of Congress, referred to above, deals with the same subject. The state statute became a law on February 5, 1907. The federal statute does not by its own terms become operative until March 4, 1908. This being the situation, did it upon its approval invalidate the state statute, on the theory that it is a direct utterance of Congress under its constitutional power upon the same subject? The two Acts embody substantially the same provisions, and it is clear that it was the intention of Congress to assume control of the subject, so far as it concerns companies engaged in interstate commerce. Counsel for appellant cite no authority in support of their contention, nor do we know of any directly in point. It seems to us, however, that in the absence of some declaration on the subject in the Act itself, indicating the intention to supersede at once existing state legislation, there is no foundation in reason for the assertion that an Act, to take effect in the future, has that effect.

In *Smith* v. *Alabama, supra,* it is said: "But for the provisions on the subject found in the local law of each state, there would be no legal obligation on the part of the carrier, whether *ex contractu* or *ex delicto,* to those who employed him, or, if the local law is held not to apply where the carrier is engaged in foreign or interstate commerce, then, in the absence of laws passed by Congress or presumed to be adopted by it, there can be no rule of decision based upon rights and duties supposed

to grow out of the relation of such carriers to the public or to individuals. In other words, if the law of the particular state does not govern that relation, and prescribe the rights and duties which it implies, then there is and can be no law that does until Congress expressly supplies it, or is held by implication to have supplied it, in cases within its jurisdiction over foreign and interstate commerce. The failure of Congress to legislate can be construed only as an intention not to disturb what already exists, and is the mode by which it adopts, for cases within the scope of its power, the rule of the state law, which until displaced covers the subject.'' While the above quotation is not directly in point, it seems to lend support to the notion that, until legislation by Congress upon any subject upon which the state has concurrent jurisdiction becomes operative, the existing state legislation is not displaced, but in the interim remains in full force, especially so in the absence of any declaration by Congress on that subject. The case of *Sherlock* v. *Alling*, 93 U. S. 99, 23 L. Ed. 819, seems also to support this conclusion.

We do not see how an Act which does not by its own terms become a rule of conduct until a future time, can be said to displace another existing rule on the same subject during the interval between the time of its enactment and the time it becomes operative, even though the existing rule be inconsistent with it, in the absence of some express or implied declaration of a purpose that such shall be the result. Legislation is not effective for any purpose until it becomes operative. In a given case the effective operation of a statute requiring expensive preparation, or a change in the mode of conducting business on the part of those whom it is intended to affect, may very properly be deferred to a future time. So far as it provides for such adjustment and changes, it may be said to have a quasi operative effect; but even in such cases the existing law must be regarded as remaining in force until it is actually displaced by the new one. The Act of Congress contains no such declaration, and we hold that the state statute, which was valid and in

force at the time of its passage, remains in force until the Act of Congress becomes effective.

We are of the opinion that there is no merit in either of the contentions made by the appellant. Consequently the judgment and order denying a new trial must be affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.