PETERSON, RESPONDENT, v. LIVESTOCK COMMISSION, APPELLANT.

No. 8665

Submitted January 16, 1947. Decided May 6, 1947.

181 Pac. (2d) 152

Mr. T. B. Weir, Mr. W. L. Clift, Mr. Enor K. Matson and Mr. Newell Gough, all of Helena, for appellant. Mr. Matson argued the cause orally.

Mr. T. H. MacDonald, Mr. T. R. Delaney, Mr. F. N. Hamman, Mr. Lloyd I. Wallace, and Mr. R. H. Weidman, all of Polson, for respondent. Mr. Delaney and Mr. Hamman argued the cause orally.

Mr. Cedor B. Aronow, of Shelby, and Mr. Paul T. Keller, of Helena, amici curiae.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Frank Peterson on March 28, 1945, made application under Chapter 52, Laws of 1937, to the Livestock Commission for a license to operate a livestock market at Polson. Hearing was held before the commission on April 9. The hearing was informal and no record was kept of the proceedings. The application was denied on April 10th and on April 11th a letter was sent to Peterson's attorney advising him of the action taken by the commission. The letter was as follows:

"After considering the application submitted by you in behalf of Mr. F. E. Peterson, the Livestock Commission at its meeting held April 10th denied your application on the following motion duly made, seconded and passed at the meeting: 'That the applications received from Polson and Kalispell be denied on the ground that the policy expressed by the last Legislature was that the Livestock Commission should not grant licenses to markets in local areas that are contiguous to markets which have been established in the state and which are successfully operating and that the Livestock Commission feels that unless the Legislature indicates that a different policy be adopted, that the Livestock Commission continue to refuse to grant such licenses.'

"The 'Livestock Commission felt that there already existed sufficient facilities to handle the sale of livestock from your neighborhood. However, the Commission instructed me to advise you that if it is your desire, you may file a new application if it can be shown that a livestock market may be established in your city and that it may be operated under the conditions set up in Chapter 193 of the Laws of Montana, 1945."

Chapter 193, Laws of 1945, was not yet in effect and did not become effective until July 1, 1945.

On April 18th, Peterson filed notice of appeal to the district court of Lake county. The commission filed what it called a response to the appeal in which it set out that the financial statement submitted with the application showed that applicant is insolvent, and that he at no time filed with the commission a written statement of financial responsibility satisfactory to the commission as required by Chapter 52, Laws of 1937; that Peterson failed to submit adequate proof that a sufficient number of cattle and horses would be handled by him at the proposed market to justify its establishment or to warrant the commission in maintaining a livestock inspector at such place and to furnish him with brand records for his use and that Peterson failed to guarantee to the state of Montana or to the commission sufficient revenue from inspection fees at the pro-

posed market to defray the cost of preparing a set of brand records within one year for use in such market; that because of other established markets nearby the proposed market would serve but a very limited territory and would draw such a limited number of livestock buyers that the highest price or actual value would not be obtained for the cattle on that account and that it would not be to the best interests of livestock owners and growers; that the commission acted entirely with sound discretion and within the jurisdiction and authority vested in it.

When the matter came on for hearing before the district court on July 17th, Peterson moved to amend the financial statement which he had submitted to the commission, by changing the figure $1,800 which was shown to be the value of real estate owned by him to the figure of $18,000, stating that the figure of $1,800 was entered on the statement through mistake. Counsel for the commission objected to this amendment upon the ground that the statement would then show that the applicant was solvent whereas the only application before the commission disclosed on its face that he is insolvent. The court permitted the amendment to be made and, over objection of the commission, permitted evidence to be introduced showing the need for a livestock market at Polson. The commission likewise submitted proof in support of the allegations made in its response to the appeal.

The court made findings of fact and conclusions of law in favor of applicant and entered judgment to the effect that Peterson is entitled to a license to establish and operate a livestock market at Polson as defined in Chapter 52, Laws of 1937, upon executing a bond in the sum of $10,000 with sureties to be approved by the commission, conditioned among other things upon the payment of all money received less expenses and commissions to the rightful owner or owners of livestock and conditioned that he would warrant title to the purchaser of livestock and that he would pay all costs and expenses in-

curred in preparing the brand records and all expense of inspection incidental to the operation of the market.

From this judgment the commission has appealed to this court.

The first question presented is whether the court erred in ▮ entertaining jurisdiction of the proceeding in view of the fact that the application before the commission disclosed on its face that the applicant was insolvent whereas the amended statement presented to the court showed otherwise. It is the contention of the commission that the case as presented to the court by reason of the amended financial statement was a case wholly different from that presented to the commission in that the financial statement before the commission showed total assets in the sum of $8,180 and liabilities in the sum of $9,550, whereas the amended statement presented to the court shows assets in the sum of $24,380 and liabilities in the sum of $9,550.

The record shows, however, that no useful purpose would have been subserved in renewing the application before the commission after the financial statement had been amended because it sufficiently appears that even though the commission had before it the amended financial statement it would still have rejected the application on the erroneous belief that it could resort to the legislative policy set out in Chapter 193, Laws of 1945, and petitioner's failure to comply therewith, as a reason for rejecting the application. This sufficiently appears from the order made by the commission denying the application. It was specifically based upon the legislative policy stated in Chapter 193, Laws of 1945. Moreover the order denying the license shows on its face that the financial statement of Mr. Peterson was not considered. If it had been considered and found insufficient then certainly the commission would have ended all dealings with Peterson instead of inviting him to file a new application under Chapter 193, Laws of 1945. The invitation to make a new application under the new law was tantamount to a finding that he was financially responsible so far as that question was concerned.

The order denying petitioner's application is the only official action of the board itself that appears in the record.

The secretary of the board, Mr. Raftery, when asked whether the financial status of the applicant was considered at the hearing, said: "No, I don't believe there was much argument at all." He also was asked as an expert witness with years of experience with the Montana Livestock Commission whether in his opinion on the facts submitted at the hearing in court the license should be granted and he answered, "No."

Mr. Warren, the only member of the board who testified before the court, said he would vote against granting the license on the evidence before the court.

Lyman Brewster, another member of the board, had written a letter to Mr. Delaney, one of counsel for Peterson, before the hearing in court. That letter was introduced in evidence and is as follows: "Thanks for the statement concerning the application for a market license. I regret that we have been unable to secure a meeting of the Commission but it seems that everyone is awfully busy. Anyhow, I wish to attend the hearing and am planning to do so, and I wish to do so because it was I who made the motion for denial of the license and I particularly set out the basis, so that if the matter came to issue the question involved would be clear. Between you and me and the gate post, and speaking individually, I believe that the only question involved (at least should be) is the one as to whether additional markets should be authorized in areas contiguous to presently established markets and I am hopeful for a court decision one way or the other, based on that question alone. If I can go to Helena, then on to the hearing, I will suggest to our attorney that the other points be waived and I hope he will agree. You see—there will be other applications from similar farm areas in the future and so the whole question of the Commission policy should be determined at the time of the hearing. It can be said as a matter of fact that the Commission would like to hold down the number of markets, so that the existing markets would *really* be markets. The situation in

some other of the states has gotten out of bounds, and we don't believe that a considerable number of markets in the state will be in the interest of the people. So the question in my opinion is as to where we should draw the line—as a matter of future policy. Thus, you can see that I am not interested in the side issues being argued. We are going to try to have a meeting just prior to the hearing so that our attitude as a commission will be clarified and presented.

"So, I hope to see you at that time."

Mr. Guinn, a member of the board of county commissioners, who was present at the hearing before the livestock commission, was asked: "Did they question at all his solvency," and he answered, "No."

The next question urged in the briefs is whether the hearing before the district court is in the nature of a trial de novo or whether the court is limited to the question of determining whether the commission acted according to law. It is the contention of the commission that the only question which the court may consider is whether it acted lawfully and within the discretion vested in it, and that the court has no right to try the issues de novo. Counsel for Peterson contend, on the other hand, that the court is given authority under the statute to try the case de novo. Section 10 of Chapter 52 provides that upon appeal "the judge of the court shall summarily hear and determine the questions involved in said appeal and shall receive and consider any pertinent evidence whether oral or documentary concerning the matter."

In the view that we take of the case, even though the court is limited to the question of determining whether the commission acted according to law as contended by the commission, the action of the court must be sustained.

The commission was in error in relying upon Chapter 193, ▮ Laws of 1945, which was not in effect when the application by Peterson was made, heard and determined. The general rule is that a statute speaks as of the time when it takes effect and not as of the time it was passed. 50 Am. Jur. 518,

sec. 500. As this court said in State v. Northern Pac. Ry. Co., 36 Mont. 582, 93 Pac. 945, 948, 15 L. R. A., N. S., 134, 13 Ann. Cas. 144: "We do not see how an act which does not by its own terms become a rule of conduct until a future time can be said to displace another existing rule on the same subject during the interval between the time of its enactment and the time it becomes operative, even though the existing rule be inconsistent with it, in the absence of some express or implied declaration of a purpose that such shall be the result. Legislation is not effective for any purpose until it becomes operative." Under Chapter 52, section 1, Laws of 1937, which was the only law in effect at the time when the application was heard, an applicant is entitled to a license upon making "a written statement satisfactory to said Commission, of financial responsibility, and of ownership or control of adequate facilities for the care, sorting, feeding, loading, unloading, and shipment of livestock for the operation of a livestock market, and tendering the fee and furnishing the bond herein. * * *"

As above stated the financial responsibility of applicant was ▇▇ shown before the court without controversy and, while it was not shown before the commission, it is clear that it would and could have been shown before the commission had the question been raised, and likewise it is clear that the same result would have followed even though it had been shown. Also it was shown that applicant either had or was able and willing to provide adequate facilities within the meaning of the statute. He tendered the required fee and evinces a willingness to place the proper bond. That being so, the commission had no discretion in the matter of granting or refusing a license. Compare State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292.

The refusal here was based upon a failure on the part of applicant to meet the requirements of Chapter 193 which was not in effect. That action was based on mistake of law and not on discretion.

But defendants and counsel appearing amici curiae contend

that on appeal from the order of the commission the court must consider and apply the law in effect at the time of the hearing before the court. The trial before the lower court took place in July, 1945, and after the effective date of Chapter 193, Laws of 1945. They rely upon section 95, Revised Codes of 1935, reading:

"Any statute may be repealed at any time, except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal."

There are many cases—perhaps the greater weight of authority —supporting the view that an appellate court in reviewing the action of the lower court will dispose of the question according to the law prevailing at the time of such disposition by the appellate court. The cases supporting this view are collected in the note in 111 A. L. R. commencing on page 1318.

Some of the cases cited in support of the majority view, take that view because of the fact that appellate courts have jurisdiction not only to correct errors in the judgment under review but to make such disposition of the cases as justice may require. The case of Yates v. St. Johns Beach Development Co., 122 Fla. 141, 165 So. 384, is typical. Coming to what the author of the note in 111 A. L. R., p. 1322 terms the minority view, he says: "On the other hand, there is considerable authority sustaining the view that the appellate court will adjudicate the question according to the law prevailing at the time of the rendition of the judgment, and not according to a subsequent law, the reason sometimes advanced for this view being that the function of the appellate court is not to consider the merits of a cause, but merely to review the judgment of the lower court with a view of determining whether it was erroneous or correct at the time it was rendered."

Many states supporting the majority view also support the minority view. This court in Butte Miners' Union No. 1 v. Anaconda Copper Min. Co., 112 Mont. 418, 118 Pac. (2d) 148, 154, has held that in an injunction suit which operates in the

future it will apply the law in effect at the time the appellate court renders its opinion because of the necessity "that equity be presently done."

Whatever the rule may be as to appeals generally from a lower to an appellate court, there are considerations affecting an appeal from an order of the livestock commission to a court which we think make it necessary for the court to apply the law in effect when the commission made its order. On such an appeal the court is not permitted to substitute its judgment and discretion for that of the commission. Its jurisdiction and authority is limited to that of determining whether the commission acted arbitrarily, capriciously or without authority of law. It is confined to the determination of judicial, as distinguished from administrative, questions.

The lower court as well as this court, because of the division of governmental powers into the three distinct departments under section 1, Article IV of our Constitution, may not substitute their discretion for the discretion reposed in boards and commissions by Legislative Act. Freeman v. Board of Adjustment, 97 Mont. 342, 34 Pac. (2d) 534; State ex rel. North American Life Ins. Co. v. District Court, 97 Mont. 523, 37 Pac. (2d) 329; State v. Healow, 98 Mont. 177, 38 Pac. (2d) 285; Fulmer v. Board of Railroad Comr's, 96 Mont. 22, 28 Pac. (2d) 849.

"A statute authorizing an appeal to a court from actions of a nonjudicial body is unconstitutional in so far as it purports to foist nonjudicial functions on the court, or invade the powers of such body, as by empowering a court to control its executive or administrative discretion." 16 C. J. S., Constitutional Law, sec. 164, p. 503. To the same effect is 14 Am. Jur., p. 258, sec. 20.

It is generally held that a statute which attempts to place the court in the place of a commission or board to try a matter anew as an administrative body is unconstitutional as a delegation to the judiciary of non-judicial powers. A few of the many cases so holding are the following: Steenerson v.

Great Northern Ry. Co., 69 Minn. 353, 72 N. W. 713; State v. Great Northern Ry. Co., 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; In re Hunstiger, 130 Minn. 474, 153 N. W. 869; State ex rel. Dybdal v. State Sec. Comm., 145 Minn. 221, 176 N. W. 759; State Board of Medical Registration v. Scherer, 221 Ind. 92, 46 N. E. (2d) 602; Re Fredericks, 285 Mich. 262, 280 N. W. 464, 125 A. L. R. 259; Mojave River Irr. Dist. v. Supreme Court, 202 Cal. 717, 262 Pac. 724; Borreson v. Dept. of Public Welfare, 368 Ill. 425, 14 N. E. (2d) 485; In re Opinion of Justices, 85 N. H. 562, 154 A. 217.

Statutes providing for appeals somewhat similar to that under consideration have been held valid by interpreting them as not granting trials de novo in the full sense of that expression but as conferring authority for the court to pass upon the lawfulness only of the order of the board or commission. Examples are: Morgan v. Dept. of Social Security, 14 Wash. (2d) 156, 127 Pac. (2d) 686; Investors Syndicate v. Hughes, 378 Ill. 413, 38 N. E. (2d) 754; Lloyd v. City of Gary, 214 Ind. 700, 17 N. E. (2d) 836.

The only proper questions that may be tried by a court on appeal from an order such as the one here involved is whether the commission acted capriciously or arbitrarily or without jurisdiction or authority under the law. People of the State of New York ex rel. New York & Queens Gas Co. v. McCall, 245 U. S. 345, 38 S. Ct. 122, 62 L. Ed. 337; State v. State Board of Equalization, 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.

It is our conclusion that since the function of the court on appeal is simply to determine whether the commission acted properly and according to law, the court in determining that question must apply the law in effect when the commission acted.

Under the law then in effect Peterson was entitled to a license.

Defendants contend that by repealing Chapter 52, before Peterson acquired any vested rights thereunder, his only recourse was to make a new application under Chapter 193,

Laws of 1945. Our view is that Peterson had the right to have his application heard and determined under the law in effect when his application was made and heard by the commission. That must be regarded as done which ought to have been done. Sec. 8758, Rev. Codes 1935.

Paintiff prior to the enactment of Chapter 52 had the right to use his property as he saw fit. Prior to the passage of Chapter 52 he could have established a livestock market at Polson or any other place in Montana. That Chapter did not confer any rights but served to restrict and limit the right to establish such markets. The legislature intended that such rights up to July 1, 1945, were limited and restricted only by the provisions of Chapter 52, Laws of 1937. The added restrictions, effective on July 1, 1945, made by Chapter 193, were not intended to apply until July 1, 1945. Prior to that time Peterson, if the law had been followed, would have had his license and would have been operating so as to entitle him to the rights conferred by section 5 of Chapter 193 and the commission will not be heard to say that he has been deprived of those rights because of its wrongful refusal to grant his application for a license. Sec. 8746, Rev. Codes 1935.

We hold that the court was right in entering judgment for applicant.

Of course in the conduct of his operations petitioner will be bound to observe the provisions of Chapter 193, Laws of 1945, which is now the only law governing his operations.

The judgment of the district court is affirmed. The opinion promulgated herein on February 4, 1947, is hereby withdrawn and this one substituted in its stead.

Mr. Chief Justice Adair and Associate Justices Choate, Cheadle, and Metcalf, concur.