No. 14883

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

DONALD E. BUTLER:  DONALD W. DAVIS et al.,

             Intervening Plaintiffs and Appellants,

vs.

LOCAL 2033 AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES et al.,

             Petitioner and Counter-Respondent and
               Respondent,

vs.

BUTTE-SILVER BOW et al.,

             Respondents, Counter-Petitioners and
               Respondents.

---

Appeal from:  District Court of the Second Judicial District,
            Honorable Peter G. Meloy, Judge presiding

Counsel of Record:

    For Appellants:

        Knight, Dahood, Mackay and McLean, Anaconda, Montana
        Bernard J. Everett argued, Anaconda, Montana

    For Petitioner and Counter-Respondent and Respondent:

        M.F. Hennessey argued, Butte, Montana

    For Respondents, Counter-Petitioners and Respondents:

        John G. Winston, County Attorney, Butte, Montana
        Robert M. McCarthy, Deputy County Attorney, argued,
        Butte, Montana

---

              Submitted:  January 14, 1980

                Decided:  FEB 6 - 1980

Filed:  FEB 6 - 1980

_Thomas J. Kearney_ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a summary judgment in favor of respondents Butte-Silver Bow and the "Union" issued by the District Court of the Second Judicial District, sitting in the County of Silver Bow.

On February 22, 1978, respondent Local 2033 American Federation of State, County and Municipal Employees, AFL-CIO (Union), filed a petition and complaint for declaratory judgment in the District Court of the Second Judicial District, in and for the County of Siver Bow, State of Montana. This action was brought against respondents Butte-Silver Bow, State of Montana, and sought a declaratory judgment interpreting certain provisions of the newly formed consolidated City and County government of Butte-Silver Bow, Montana, dealing with promotions in the Sheriffs Department prior to or during consolidation.

On May 17, 1978, Butte-Silver Bow filed its answer to the petition brought by the Union along with a counter-complaint.

On January 17, 1979, the Union and Butte-Silver Bow stipulated and agreed to declare null and void promotion to higher ranks within the Silver Bow County Sheriffs Department received by intervening plaintiffs/appellants, Donald E. Butler, Donald W. Davis, Fred E. Guay, Herbert R. Miller, Raymond W. Russell and Gale E. Wood ("Sheriff's Officers").

The District Court entered a proposed order based upon this stipulation declaring the promotions received by the Sheriff's Officers null and void and further ordering the Sheriff's Officers among others to appear before the court

-2-

to show cause why the order should not become final.

The Sheriff's Officers moved the court pursuant to Rule 24(a)(2) M.R.Civ.P. to intervene in the action; this motion was granted and a complaint in intervention was filed.

On April 19, 1979, all the parties moved for summary judgment. The District Court issued its findings of fact and conclusions of law and order on June 11, 1979, declaring the Sheriff's Officers' promotions null and void. Appellant officers bring this appeal.

On April 12, 1977, Sheriff George Patrick Hagel, the duly elected, qualified and acting Sheriff of Silver Bow County promoted the six officers named herein to higher ranks within that Department. The promotions they received were either from deputy to sergeant or sergeant to lieutenant of the Silver Bow County Sheriffs Department.

On May 2, 1977, the City of Butte and County of Silver Bow consolidated their local governments into one unified government under one charter. The new government was to have the status of a county and incorporated municipality and was named Butte-Silver Bow, Montana. The charter had been adopted by the voters on November 2, 1976 and by its terms was not to become effective until May 2, 1977.

Section 5.05 of the Butte-Silver Bow Charter set forth the provisions governing the organization of the law enforcement department for the new government. The new law enforcement department was to be formed by combining the former City of Butte Police Department and the Sheriffs Department of Silver Bow County under the Sheriff of Butte-Silver Bow. Section 5.05(f) provides as follows:

"The sheriff shall so organize the new
department as to recognize the _existing_
_ranks_ attained by members of _the exist-_
_ing_ _police_ _and_ _sheriff_ _departments_."
(Emphasis added.)

Following their promotions the six appellant Sheriff's
Officers assumed the duties of their new ranks under the
Silver Bow County Sheriffs Department. On May 2, 1977, the
effective date of the Butte-Silver Bow Charter, the new law
enforcement department was organized and the six appellant
Sheriff's Officers retained their ranks pursuant to section
5.05(f) of the new charter.

On May 4, 1977, the Commissioners of the newly formed
government of Butte-Silver Bow met and passed Emergency
Ordinance No. 2 to govern the method of selection, examin-
ation and confirmation of all appointments and promotions
within the new law enforcement agency. Section 15 of the
Emergency Ordinance provided it would become effective upon
passage and approval. It was approved by Chief Executive
Mario Micone on May 10, 1977.

The District Court declared the promotion received by
the six appellant Sheriff's Officers null and void.

The following issues have been presented to this Court
for review:

1. Did the District Court err in ruling that under
Section 5.05(f) of the Butte-Silver Bow Charter, the pro-
motions of appellants on April 11, 1977 were null and void?

2. Did the District Court err in ruling that Sheriff
Hagel did not have authority to promote the appellant Sher-
iff's Officers on April 11, 1977?

The first step in resolving this case is to determine
the date the charter became operative. Then it becomes

-4-

necessary to determine what effect this operative date has on the language in section 5.05 of the charter.

Section 10.02 of the Butte-Silver Bow Charter provides that "[t]his charter shall become effective on May 2, 1977." This language is straightforward and leaves little room for doubt as to its meaning.

Section 5.05 deals with the Chief Law Enforcement Officer and provides:

> "The Sheriff shall be the chief law enforce-
> ment officer of the government and shall have
> the duties and powers provided by this charter,
> law, ordinance or resolution subject to the
> following provisions:
>
> "(a)   The existing police department of the
> City of Butte and the sheriff's department
> of Silver Bow shall be combined into one
> department under the control and super-
> vision of the sheriff.  The present chief
> of police of the City of Butte shall be
> the undersheriff and shall be paid at
> least the same salary received at the
> time of the adoption of this charter.
>
> "(b)   The present members of the City of
> Butte police department and the deputy sher-
> iffs of Silver Bow County shall be members
> of the new department and have the same
> tenure rights provided by state law.
>
> "(c)   The present members of both existing
> departments shall receive the same compen-
> sation, including base pay and longevity
> allowances, as they now receive until such
> time as the council of commissioners adopts
> a salary schedule for members of the new
> department.
>
> "(d)   All appointments to the new department
> shall be made pursuant to the Metropolitan
> Police Law of the state, (Chapter 18,
> Title 11, Revised Codes of Montana, 1947)
> except:
>
> "(1)   That the sheriff shall have the powers
> therein given to the mayor in a mayor-council
> form of municipal government, the council
> of commissioners shall have the powers of the
> city council, and the clerk and recorder shall
> have the powers of a city clerk, and;

"(2)    members of the department may be candidates for any elected office and may participate in political activities notwithstanding the provisions of the Metropolitan Police Law of the state.

"(e)    The council of commissioners shall establish by ordinance a Law Enforcement Commission consisting of five (5) members which shall have the powers and perform the duties required of police commissions by the Metropolitan Police Law and such other duties as the ordinance may provide.

"(f)    The sheriff shall so organize the new department as to recognize the existing ranks attained by members of the existing police and sheriff departments.

"(g)    All pension rights presently provided by state law to members of the existing City of Butte police department and the members of the sheriff's department of the County of Silver Bow shall continue in full force and effect, provided that the council of commissioners may by ordinance increase the pension benefits, and may in the future provide for a uniform pension system if the same is permitted by state law.

"(h)    When a vacancy occurs in the position of the undersheriff after the adoption of this charter, the sheriff may fill such vacancy by appointing a person, qualified by training and experience, to fill such position without the approval of the police commission or council of commissioners, but such appointee shall acquire no tenure rights except those established tenure rights he has at the time of his appointment.    If such appointed undersheriff shall have been a member of the department prior to his appointment and not continued in such position by the sheriff he shall revert to the former rank he held within the department.    All other positions within the department shall be established by such ordinances as the council of commissioners shall adopt."    (Emphasis added.)

The emphasized phrases form the basis for the controversy presented here.

Appellants contend that section 10.02 of the charter controls and that the charter did not become effective for any reason until that date.    They argue that the rules governing effective dates of charters are similar to those

governing effective dates of statutes and cite the general rule that statutes become effective on the date prescribed in the statute.

Respondents, however, disagree and seek to have certain specific provisions of section 5.05 be effective from the time the charter was passed on November 2, 1976. They argue that to reach any other conclusion would effectively disenfranchise the electorate's power to determine the make-up of the Butte-Silver Bow Law Enforcement Department and would contravene Article II, Section 1 of the 1972 Montana Constitution dealing with popular sovereignty. In support of this premise that the word "existing" means as of the date of approval and not the date the charter becomes effective, respondents cite an obscure Arizona case, Flowing Wells Co. v. Culin (1908), 11 Ariz. 425, 95 P. 111, which interprets a statute concerning corporate dissolution. A reading of the case indicates it is of no help to the resolution of this problem.

It is the general rule in Montana that a statute speaks as of the time when it takes effect and not as of the time it was passed. Peterson v. Livestock Commission (1947), 120 Mt. 140, 181 P.2d 152, 156.

In Peterson the plaintiff had made an application to the Livestock Commmission to operate a livestock market at Polson. The Livestock Commission denied Mr. Peterson's application on the ground that the policy expressed by the legislature in Chapter 193 of the Laws of Montana, 1945 was that the Livestock Commission should not grant licenses to markets in local areas contiguous to previously established and successful markets. This Court noted that the law ruled upon by the Commission was not in effect when the Commission

-7-

denied Peterson's application. We stated:

> "'We do not see how an act which does not by
> its own terms become a rule of conduct until
> a future time can be said to displace another
> existing rule on the same subject during the
> interval between the time of its enactment
> and the time it becomes operative, even though
> the existing rule be inconsistent with it,
> in the absence of some express or implied
> declaration of a purpose that such shall be
> the result. Legislation is not effective for
> any purpose until it becomes operative.'"
> 181 P.2d at 156, citing State v. Northern
> Pac. Ry. Co. (1908), 36 Mont. 582, 93 P. 945.

The rationale applied to effective dates of statutes has also been applied by some courts to charters of municipal corporations. "The time when a new charter, or an amendment of an existing charter, adopted by the municipality takes effect is sometimes fixed . . . by the charter or amendment itself . . . A new charter or an amendment to a charter ordinarily is to be construed to operate prospectively rather than retroactively." 62 C.J.S. Municipal Corporations, § 95, p. 224. See also State v. Devin (1946), 26 Wash.2d 333, 173 P.2d 994; State v. Kirby (1942), 349 Mo. 1010, 163 S.W.2d 964.

Respondent treats section 10.02 as a general provision and urges this Court to hold that the specific provisions of section 5.05 control.

This interpretation essentially puts the cart before the horse and asks this Court to state that the charter became effective on one date, but that certain of its provisions became operable before the charter itself became operable. This conclusion cannot logically be supported. The charter specifically provides for an effective date; this effective date according to section 10.02 applies to the whole charter. There is nothing in the charter to indicate an effective date other than that set forth in section

10.02. The language in section 5.05 has no effect until the charter becomes operative, therefore, the promotions of the officers if valid would have to be recognized.

The validity of these promotions rests on the power of the sheriff to make them and is the second issue facing this Court.

The District Court held that Sheriff Hagel did not have the authority to promote or create new ranks within the Silver Bow County Sheriffs Department after November 2, 1976.

Appellants contend this holding is inconsistent with well established principles of common and statutory law. They cite hornbook law for the proposition that a modern sheriff has authority to organize and administer his department unless prohibited or limited by statute. They submit that Montana's statutory scheme does not limit the power and authority of the sheriff to organize his department. Section 7-32-2101, MCA, et seq.

Respondents contend that under Montana law, a sheriff's office is limited in the amount of deputies it may have, however, the Board of County Commissioners may if it desires expand the number of deputies. Respondents submit that the Sheriff had to have the consent and approval of the County Commissioners before such promotions are valid.

Montana law in this area is scarce. It appears that the rank in a sheriff's office is limited to either an undersheriff or a deputy sheriff and that in counties the size of Silver Bow the number of deputies is limited to six (section 7-32-2103, MCA).

The Board of County Commissioners is given a general power to appoint a greater number of county deputy officers

than the maximum number allowed by law when in the judgment of the Board, such greater number of deputies is needed for the faithful and prompt discharge of the duties of any county office (section 7-4-2402, MCA). This statute has been applied by this Court to appointment of additional deputies in the sheriff's office. Rusch v. Board of County Commissioners (1948), 121 Mont. 162, 191 P.2d 670; Hogan v. Cascade County (1907), 36 Mont. 183, 92 P. 529; Jobb v. County of Meagher (1897), 20 Mont. 424, 51 P. 1034. It follows that the Board of County Commissioners would have to approve the appointments especially where, as here, new positions were created. No approval was sought or received from the Commission for the contested appointments. The appointments were therefore void and the District Court acted properly in disallowing them.

The judgment of the District Court is hereby affirmed.

_____
Justice

We concur.

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea, deeming himself disqualified, did not participate in this case.

-10-