# BENJAMIN A. PAUST, AGENT v. ALEXIS GEORGIAN.
# SAME v. MRS. ALEXIS GEORGIAN.[1]

November 12, 1920.

Nos. 21,801, 21,802.

**Landlord and tenant — definition of immoral conduct.**

1. Immoral conduct, in the generally accepted meaning and understanding thereof, includes only such acts and practices as are inconsistent with decency, good order and propriety of personal conduct.

**Same — sale of books and magazines of immoral nature.**

2. A stipulation in a lease of a building, in which the tenant was to conduct a book-store, prohibiting immoral practices on the premises, construed in the light of the facts before the parties when the contract was entered into, does not include the sale of books or magazines of an immoral nature.

**Same — construction of condition in lease.**

3. A restriction of the sale of such books was not in the minds of the parties at the time, and the expression "immoral practices" as used in the lease, is therefore to be construed in harmony with the general standards of moral conduct.

Two actions in forcible entry and unlawful detainer in the municipal court of Minneapolis. The answer was a plea of not guilty. The action was dismissed as to Alexis Georgian. The cases were tried together before C. L. Smith, J., who at the close of the testimony denied the motion of Mrs. Georgian to dismiss as to her, made findings, and ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, Mrs. Georgian appealed. Affirmed.

*C. C. Joslyn,* for appellant.

*H. E. Wheeler* and *C. E. Warner,* for respondent.

BROWN, C. J.

Proceedings in forcible entry and unlawful detainer, in which plaintiff had judgment and defendants appealed.

[1]Reported in 179 N. W. 735.

The complaint is in the usual form, alleging generally the right of possession of the premises in plaintiff, and the wrongful detention thereof by defendants, and specifically that defendants are in the possession of the premises under a lease, the terms of which required of them the payment of specified rent at stated intervals, and which contained the condition or restriction:

"That the lessee will not keep or allow any liquors or beverage of any intoxicating nature or tendency, kept or tolerated on said premises, nor any gambling, or other immoral practices," together with the reservation that "as a part of the consideration the lessor reserves the right to cancel this lease in the event the lessor decides to erect a new building upon said premises, by giving said lessee sixty (60) days notice."

And in support of the general allegation of wrongful detention of the premises by defendants the complaint further alleges: (1) A default in the payment of the stipulated rent; (2) a violation of the conditions of the lease by permitting immoral practices upon the premises, and (3) that the lessor determined to construct a new building upon the premises and had exercised the option reserved by the provision of the lease above quoted, by giving notice of the cancelation thereof.

Both defendants appeared and interposed pleas of not guilty.

The trial court found that there was default in the payment of rent, which had not been removed up to the time of trial, and that defendants had permitted "immoral practices" upon the premises in violation of the terms of the lease, but made no finding on the question of the cancelation of the lease under the rebuilding stipulation, though the evidence would have justified such a finding. No request for a finding thereon was made, and that feature of the case is not therefore involved at this time and is passed without further mention.

The assignments of error challenge the findings to the effect that defendants permitted immoral practices upon the premises, but in no other respect. The default in the payment of rent stands conceded on the record, and that necessarily will require an affirmance of the judgment, whether the findings so challenged are sustained or not. But defendants claim that, under the provisions of chapter 428, p. 634, Laws 1917, G. S. 1917 Supp. § 6807, they have the right to pay the delinquent rent at any time before the possession of the premises is given to plaintiff in

the proceeding, together with the costs of suit, and thus be reinstated to all rights under the lease. But since such payment will not remove the effect of permitting immoral practices upon the premises, as found by the trial court, those findings are attacked as not sustained by the evidence, and if defendants prevail in that contention then, after the cause is remanded to the court below, the right given by the statute may be exercised, as they claim, thus restoring their rights under the lease for the remainder of the time. We come directly to that feature of the case.

The leased property consisted in a store building, known as 127 South Fourth street in the city of Minneapolis, and was leased to defendants for the period of three years. It appears from the lease that defendants were to conduct a book-store therein, and that fact was known to and understood by the lessor. The character of the books to be kept on sale was not specified, but, knowing the general use to which the premises were to be put, the lessor necessarily was charged with notice that such books and literature would be kept for sale therein as usually may be found in stores or shops of that kind; a variety of general and miscellaneous books, pamphlets and magazines.

The finding that defendants permitted "immoral practices to be carried on in said premises," was founded on evidence tending to show that certain of the books kept for sale by defendants were of an immoral nature; books and pamphlets advocating and urging disloyalty to the government, and books and pamphlets, treating of matrimony and kindred social relations, which are claimed to be highly immoral and subversive of the best interests of society.

The presence of this class of literature in the stock carried by defendants is not disputed; it was kept on display and for sale to the trade, and was sold to whomsoever applied as purchaser.

Defendants contend in support of the appeal: (1) That the books and pamphlets complained of are not immoral, and properly viewed and understood contain nothing upon which to base a characterization to that effect; and (2) whether construed as immoral or not, that a purpose to restrict and prohibit a sale thereof upon the leased premises was not within the contemplation of the parties in entering into the contract, and that a sale or keeping for sale thereon does not constitute "immoral practices" within the meaning of that expression as embodied in the lease.

1. We do not determine the first question; our conclusion upon the second renders a decision thereof unnecessary. The immoral character of the books may, for the purposes of the case, be conceded, yet in our view of the contract a sale or display thereof on the leased premises does not constitute "immoral practices" within the meaning of that expression, construed in the light of the transaction and what the parties had before them at the time. It was known and understood that the premises were to be used as a book-store; in fact the lease describes the premises as "Book Store at 127 South Fourth Street." If the parties discussed or had in mind a restriction upon the class of books to be kept and sold on the premises, it is clear that a clause expressly so providing would have been incorporated in the lease. They were particular in excluding the sale of liquor, and prohibiting gambling, and, if the expression "or other immoral practices," under the rule of ejusdem generis, is not to be limited to acts and things of a similar nature, it should in the light of the facts before the parties at the time of the transaction be confined to the generally accepted meaning and understanding of immoral conduct, namely, such acts and practices as are inconsistent with principles established by common consent for securing decency, good order and propriety of personal conduct. Abbott, Law Dict. 582. That would include and preclude the right of the tenant in this case to permit the premises to be used as a bawdy house, for lewd dancing or other like purposes, or unlawful assemblies in violation of express law. Technically any violation of the law is an immoral act. But the parties did not have that rule in mind in entering into the contract, at least they did not so express themselves in the writing. It is therefore not important whether defendants, by selling the literature in question, exposed themselves to criminal prosecution.

In view of this conclusion we refrain from a discussion of the much mooted question as to which of the rapidly accumulating collection of books and pamphlets, on sale generally to the public, even those involved in this action, condemned on the one hand as highly immoral and lauded on the other by persons of the same standard in society as educational and useful, may as a matter of law be declared indecent and immoral.

Judgment affirmed.