GILBERTO VÉLEZ QUIÑONES, Plaintiff and Appellee, *v.* SECRETARY OF EDUCATION, Defendant and Appellant.

No. 49. Decided December 7, 1962.

J. B. *Fernández Badillo, Solicitor General,* and *Rodolfo Cruz Contreras, Assistant Solicitor General,* for appellant. Appellee did not appear in Court.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

At the request of the Secretary of Education we issued a writ of certiorari to review the proceedings had in the Superior Court, San Juan Part, which rendered judgment in this case reversing the Secretary's action removing appellee from his office of public school teacher for immoral conduct. This judgment does not lie because it is contrary to law. Let us see why.

On January 17, 1958 the Secretary of Education preferred a charge of immoral conduct against appellee consisting in having seduced an unmarried young girl with whom he had sexual intercourse, ratifying the suspension from employment and salary ordered on August 21, 1957. After holding an administrative hearing on the matter on May 15, 1958 before a committee designated by that officer for that purpose, the committee submitted a report to the Secretary of Education on June 13 of that year with the

finding that appellee, a permanent rural elementary teacher in the discharge of his office in the Municipality of Guánica, had sexual intercourse with the daughter of the janitor of the school where appellee was working; that on promise of marriage he had sexual intercourse with the said young girl until she was six-months pregnant by appellee; that the latter tried to take the girl to a hospital for the purpose of "undergoing an abortion," and that during pregnancy he wrote a letter to the girl's mother stating his desire to lend financial help to the girl in order to prevent further difficulties and so that the latter "would not say anything"; and that appellee failed to keep his promise of marriage. The committee concluded that the evidence showed that appellee was guilty of immoral conduct in the discharge of his office and that his conduct as a teacher was improper and also immoral, and it therefore recommended appellee's removal from office as a teacher, effective as of August 21, 1957 when he was suspended from office and salary, and also the cancellation of his teacher's license or certificate. In view of that report, on June 17, 1958 the Secretary of Education notified appellee that he was found guilty of the charge and removed him as a public school teacher effective as of August 1, 1957. Appellee appealed from the Secretary's action to the Superior Court, Ponce Part, which transferred the appeal to the San Juan Part of that Court.

On July 7, 1960 the Superior Court, San Juan Part, rendered judgment granting the appeal, reversing the Secretary's resolution and ordering appellee's reinstatement in the office or employment which he held at the time of removal with all inherent rights and privileges, including payment of the salaries which he failed to receive as a result of the removal. The only evidence offered in that appeal was the stenographic record of the administrative hearing before the said committee. The court did not consider the defense that the removal was illegal for lack of good cause at law since

appellee had been acquitted of the offense of seduction, relying on the doctrine announced by this Court in the case of *Cruz v. Garrido, Commissioner*, 58 P.R.R. 655 (1941), in the sense that it is not necessary to take into consideration the fact that appellant had been acquitted in a criminal prosecution based on the same facts which brought about his removal. To that effect, this Court held in that case that "The criminal action is independent of the administrative proceeding and one is not dependent upon the other. An appointing official's hands would be tied and he would be deprived of all the prerogatives which the law grants him over dismissals from office, if the courts were compelled to order the reinstatements of employees because of the fact that another court had acquitted him in a criminal action based on the same facts which brought about his removal." The trial court set aside the Secretary's decision on the ground that it was not immoral for a public school teacher, who is single, to have sexual intercourse with an unmarried woman, in the absence of evidence "that those relations were public and notorious, that they had any relation with his teaching position, that they were known to be living in concubinage, that the school, the community, the pupils, fellow teachers had knowledge or were affected by appellant's conduct."

It is alleged that the trial court committed error of law (1) in adopting the preceding criterion on the concept of "immorality"; (2) in disregarding additional evidence which supported the charge of immorality; and (3) in substituting its view for that of the Secretary of Education notwithstanding that the latter's conclusions are supported by substantial evidence and that there is rational basis in the evidence for the formulation of such conclusions.

The removal in this case was ordered in pursuance of the provisions of § 5 of Act No. 94 of June 21, 1955 and § 5 of Act No. 312 of May 15, 1938, as amended by Act No. 6 of July 24, 1952. The appeal to the Superior Court was

taken under the authority of § 13 of Act No. 94 *supra* of 1955 —18 L.P.R.A. §§ 264, 217, and 272.[1]

 Section 13 of Act No. 94 *supra* provides that as a result of such appeal the hearing of the case shall be set at which the parties shall offer evidence in support of their contentions. Notwithstanding this provision, which is of the nature of a de novo trial, the Solicitor General alleges that that Act should be construed in the sense of providing for a limited review of questions of law and not a de novo trial, since the power to discharge granted to the Secretary of Education is an executive function [2] and should therefore

---

[1] Section 5 of Act No. 94 *supra*—18 L.P.R.A. § 264—provides in part as follows:

"Candidates for teacher's certificates shall meet the following general qualifications:

(1) . . . . . . . . . . .

(2) To be of a blameless moral behavior"

Section 5 of Act No. 312 *supra*—18 L.P.R.A. § 217—reads as follows:

"Permanent teachers may be suspended or removed from office only for just cause, according to the provisions of, and the procedure prescribed by, the Compiled School Law and the regulations of the Department of Education; Provided, however, That in cases of immoral conduct or physical or mental disability, said teachers shall be suspended summarily, until the hearing of the case."

Section 13 of Act No. 94 *supra*—18 L.P.R.A. § 272—provides:

"Any teacher aggrieved by the decision of the Secretary of Education in any of the instances referred to in the preceding section shall have the right to appeal before the Superior Court within a period of fifteen (15) days reckoning from the date the Secretary of Education served notice on him of the resolution cancelling his certificate. Said appeal shall be taken by filing with the clerk of the above-mentioned court a writ containing the finding of fact and the issues of law on which the appellant bases his remedy. Notice of said writ shall be served on the Secretary of Education in the manner determined by the court and the Secretary shall answer within thirty days following the date of such notice. After the answer is filed, the court shall set a date within the thirty days following such filing for the hearing of the case, at which hearing the Secretary may produce evidence in support of his resolution, and the appellant may offer such evidence as he may have or may deem necessary. It shall be the duty of the Superior Court taking cognizance of the case to render judgment not later than the twentieth day after the hearing is held."

[2] Numerous cases are cited in 22 Iowa L. Rev 162 in which it has been held that the power to discharge a teacher is an executive function subject to judicial review only for abuse of discretion.

be subject only to a limited review. *Sellin* v. *City of Duluth,* 80 N.W.2d 67 (Minn. 1956); *City of Meridian* v. *Davidson,* 53 So.2d 48 (Miss. 1951); *Peterson* v. *Livestock Commission,* 181 P.2d 152 (Mont. 1947); *City of Jackson* v. *McLeod,* 24 So.2d 319 (Miss. 1946); *State Board of Medical Regulation and Examination* v. *Scherer,* 46 N.E.2d 602 (Ind. 1943); *De Mond* v. *Liquor Control Commission,* 30 A.2d 547 (Conn. 1943.) Commentator K. C. DAVIS sums up the doctrine of these cases as follows:

"Statutory provisions for de novo review are unconstitutional if the administrative action is deemed nonjudicial, for the separation of powers theory prevents a court from performing nonjudicial functions. State courts, however, often avoid unconstitutionality by interpreting such provisions to mean that the review should be limited, even when the provisions are quite explicit in providing for de novo review." 4 DAVIS, Administrative Law Treatise 188, § 29.11.

In Puerto Rico, however, we have followed the doctrine that limited judicial review in the cases under consideration will lie unless the statute expressly provides for a de novo trial, which is in fact what is provided in the case at bar. *López* v. *Muñoz, Governor,* 80 P.R.R. 4, 10–11 (1957); *Rivera* v. *Benítez, Chancellor of the University,* 73 P.R.R. 361 (1952); *Ledesma, Administrator* v. *District Court,* 73 P.R.R. 379 (1952); *Marín* v. *Pagán,* 52 D.P.R. 966 (1938); *In re: Ortiz* v. *Venegas,* 43 P.R.R. 374 (1932); *Gutiérrez* v. *Monclova, Mayor,* 39 P.R.R. 823 (1929); and *Coll* v. *Todd, Mayor,* 35 P.R.R. 572 (1926).

The evidence introduced at the administrative hearing showed that appellee not only had sexual intercourse with the young girl in question but also with other persons (Tr. Ev. 32); that the prosecutrix complained to Judge Torres Rodríguez of Yauco (Tr. Ev. 162) and the latter subpoenaed appellee, who appeared before him and promised to marry the girl (Tr. Ev. 40); the appellee tried to submit the girl to an illegal abortion (Tr. Ev. 45, 46, 109). Another fact

which unquestionably made notorious the existing relations between the prosecutrix and appellee was the filing of an information for seduction against the latter, the birth of a child to the girl, and the filing of a complaint against appellee for abandonment of minors (Tr. Ev. 160–63). The evidence on the prosecutrix's reputation was conflicting, the investigating committee having given credit to appellant's evidence to the effect that the prosecutrix "was a young girl reputed to be chaste and pure and of good reputation in the community of Guánica."

Let us analyze the errors assigned by appellant in the light of the foregoing exposition of the law and of the preceding summary of the evidence.

1–2. The trial court concluded that appellee had sexual intercourse with the prosecutrix, but that the evidence pointed to the fact that these relations were not public and notorious and that, therefore, appellee is not guilty of immoral conduct because of the fact alone that it was found proved, namely, that he had sexual intercourse with the prosecutrix. The existing legislation requires as one of the qualifications for a teacher's certificate that the candidate be of an unblemished moral behavior, and it authorizes the removal of a teacher from office for immoral conduct. The office of teacher in society is a ministry which requires of the incumbent, in and outside of school, a conduct of absolute rectitude, "unblemished," above suspicion. It ought to be so since the teacher not only imparts education to his pupils but contributes substantially to mold their character and habits, and in his relations with them he serves as a beacon, as guidance, as example.

By immorality is meant all those acts or practices which are in contravention of mutually established standards in order to attain decency, good order, and correct personal conduct. Hence, everything that is hostile to the welfare of the general public and contrary to good morals is immoral; it is not confined to sexual matters, but includes conduct

inconsistent with rectitude or indicative of corruption, indecency, depravity, dissoluteness, or as wilful, flagrant, or shameless conduct showing moral indifference to the opinion of respectable members of a community, and as an inconsiderate attitude toward good order and the public welfare. *Orloff* v. *Los Angeles Turf Club*, 227 P.2d 449 (Cal. 1951) ; *Paust* v. *Georgian*, 179 N.W. 735 (Minn. 1920). The fact is that certain standards of conduct which have no equivalence in the private enterprise are required of certain public employees such as the health engineer, the police officer, and the teacher, because of the nature of their obligations. In terms of morality the teacher should endeavor to be a model of a moral person, that is, he should guard from setting an example which may induce a child to acquire bad habits, and he should also demonstrate what is meant positively by dedication to improve the attitude and the conduct of his fellow creatures. O. GLEM STAHL, Public Administration Service Ethics in a Democracy, Ch. 17; W. A. SAUCIER, Theory and Practice on the Elementary School. The Code of Ethics of the Teachers' Association, amended and approved in the Assembly of December 1947, provides in the foreword that the teacher "(2) should observe behavior above reproach which may serve as an example to his pupils," and in § 2 it provides that "The teachers shall respect the sound customs or traditions of the community where they work and shall abide by the moral standards established for the Puerto Rican society." [3]

---

[3] The Code of Ethics approved by the Board of Directors of the Teachers' Association on April 25, 1959 by express delegation of the Assembly of that Association held December 28 and 29, 1958, provides in part as follows:

"The teaching profession is the one called upon to serve as guidance and orientation to children, adolescents, and adults. Its first obligation and Christian duty consists in imparting knowledge, developing abilities, cultivating the mind, refining the spirit, and nourishing the soul of the pupils, preparing religious citizens useful to society and to themselves and who may feel happy by enjoying the benefits and assuming the duties of a system of life governed by democratic standards.

■■ In *Tracy* v. *School Dist. No. 22, Sheridan County*, 243 P.2d 932 (Wyo. 1952), it was held that a letter charging a teacher with drinking within boundary of the schoolhouse and offering of such to students meant intoxicating liquors and was sufficient to apprise the teacher of the grounds on which his removal was sought. The court in this case said, citing from the work The Law and Public Education, by HAMILTON and MORT, that "The peculiar relationship between the teacher and his pupils is such that it is highly important that the character of the teacher be above reproach." It is therefore settled that a teacher may be removed for immorality or misconduct. The Court of Appeals of Kentucky has said that both patrons and pupils regard the teacher as an exemplar whose conduct might be followed by his pupils, and the law by necessary intendment demands that he should not engage in conduct inviting criticism and suspicion of immorality. *Gover* v. *Stovall et al.*, 237 Ky. 172, 35 S.W.2d 24 (Ky. 1931). Even where charges of immoral reputation are not supported by plenary evidence, in certain instances they may be sufficient to remove a teacher. It is essential for the greatest benefit of the teacher in the school that he have not only good character but also that he enjoy good reputation.

*Appeal of Batrus*, 26 A.2d 121 (Pa. 1942), upheld the discharge of a teacher engaged in selling and distributing malt beverages, procuring a liquor license in her name for the purpose of misleading the Liquor Control Board which

---

"The greatness of a country rests on the education, economic independence, the sense of responsibility and sacrifice, the spiritual and moral strength of its individuals." Postulate I.

"The teaching profession holds in society a position of prestige and confidence which involves the teacher's private life as well as his relations with the school and the community. The educational task is more effective when these relations are cordial and are based on constructive criticism and a desire to co-operate.

"In order to accomplish this postulate, the teacher must:

"1. Respect the sound customs and traditions of the community in which he works and endeavor to adapt himself to the reasonable standards of conduct accepted by the Puerto Rican society." Postulate III.

would not have issued the license to the teacher's father, and failing to report all of this, but on the contrary informing that she was not engaged in any other business when applying for a teacher's license, on the ground that such facts constituted an imputation of immorality. The court stated as follows: "We think it is self-evident that the conduct of a teacher, which is subversive of those standards of moral rectitude which the law has established both for government and social conduct, is not conducive to the maintenance of the integrity of the public school system." In *Horosko* v. *School Dist. of Mount Pleasant Tp.*, 6 A.2d 866 (Pa. 1939), in upholding the dismissal of a teacher for immorality and incompetency on the ground that she acted as bartender in the husband's beer garden, drank beer in the presence of her pupils, shook dice with customers for drinks, and showed them how to play a pinball machine, the court said that "immorality is not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate." In *Gilmer* v. *Stover*, 45 Dauph 257 (Pa. 1939), it was held that having sexual intercourse before the marriage constituted an act of immorality in the case of a teacher.

It seems clear that in the instant case the trial court failed to consider evidence in the record offered before the investigating committee to the effect that appellee not only engaged in sexual intercourse with the prosecutrix on many occasions but also that such relations became notorious and scandalous owing to the judicial actions brought against appellee for seduction and abandonment of minors, for his unfulfilled promise to marry the prosecutrix, and for attempt to induce her to undergo an abortion. Such facts showed fully that appellee lacked moral conduct above reproach and the irreproachable reputation so essential to the teaching profession required by statute, and we therefore conclude

that the trial court committed the first two errors assigned by appellant.

3. The established doctrine of this Court being that limited judicial review in these cases will lie where the statute does not expressly provide for a de novo trial, and it having been shown that the statute in this case actually provides for a de novo trial, we could hold and do hold that the trial court did not commit the error in not confining itself to deciding that the conclusions of the Secretary of Education are supported by substantial evidence.

In view of the foregoing, the judgment rendered by the trial court in this case will be reversed and another judgment rendered instead sustaining the decision of the Secretary of Education removing appellee as a public school teacher.