GILBERTO VÉLEZ QUIÑONES, demandante y recurrido, *v.* SECRETARIO DE INSTRUCCIÓN PÚBLICA, demandado y recurrente.

*Número:* 49      *Resuelto:* 7 de diciembre de 1962

*J. B. Fernández Badillo, Procurador General*, y *Rodolfo Cruz Contreras, Procurador General Auxiliar*, abogados del recurrente. El recurrido no compareció ante este Tribunal.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

A solicitud del Secretario de Instrucción Pública expedimos mandamiento de certiorari con el fin de revisar los procedimientos habidos en el Tribunal Superior, Sala de San Juan, que dictó sentencia en este caso revocando la acción tomada por dicho Secretario destituyendo al recurrido de su cargo como maestro de instrucción pública, por inmoralidad. Dicha sentencia es improcedente por ser contraria a derecho. Veamos por qué.

El día 17 de enero de 1958 el Secretario de Instrucción Pública le formuló al recurrido un cargo por razón de inmoralidad consistente en haber seducido a una joven soltera con quien realizó actos carnales, ratificando la suspensión de

empleo y sueldo que fuera ordenada el 21 de agosto de 1957. Luego de celebrarse una vista administrativa sobre el asunto el día 15 de mayo de 1958, ante un comité designado al efecto por dicho funcionario, aquél rindió un informe al Secretario de Instrucción Pública el 13 de junio del mismo año declarando como hechos probados que el recurrido, maestro elemental rural permanente en el ejercicio de su cargo en la municipalidad de Guánica, tuvo relaciones amorosas con la hija de la conserje de la escuela donde trabajaba el recurrido; que bajo promesa de matrimonio tuvo relaciones sexuales con la referida joven hasta que ésta tuvo seis meses de encinta del recurrido; que éste trató de llevar a la joven en cuestión a una clínica para "sacarle el muchacho", y que durante el embarazo, el recurrido se dirigió por carta a la madre de la joven, manifestando su deseo de ayudar económicamente a la joven para evitar ulteriores dificultades y para que ésta "se quedara callada"; y que el recurrido no cumplió su promesa de matrimonio. Concluyó el comité que la prueba demostró que el recurrido era culpable de conducta inmoral en el desempeño de su cargo y que su conducta como maestro de escuela, además de inmoral, era impropia y, en tal virtud, el comité recomendó la destitución del recurrido de su cargo de maestro, efectiva desde el día 21 de agosto de 1957 en que fue suspendido de empleo y sueldo, recomendando, además, la cancelación de la licencia o certificado de maestro expedida al recurrido. En vista de dicho informe, el día 17 de junio de 1958 el Secretario de Instrucción Pública procedió a notificar al recurrido que lo declaraba culpable del referido cargo y que lo destituia como maestro de instrucción pública efectivo el primero de agosto de 1957. De dicha actuación del Secretario apeló el recurrido ante el Tribunal Superior, Sala de Ponce, la que trasladó el recurso a la Sala de San Juan de dicho Tribunal.

El 7 de julio de 1960 el Tribunal Superior, Sala de San Juan, dictó sentencia declarando el recurso con lugar, revocando la decisión del Secretario y ordenando la reposición

del recurrido en el cargo o empleo que desempeñaba a la fecha de su destitución con todos los privilegios y derechos que le correspondían incluyendo el pago de los sueldos dejados de percibir con motivo de la destitución. La única prueba ofrecida en dicho recurso fue el récord taquigráfico de la vista administrativa ante el referido comité. Dicho tribunal no consideró la defensa de que la destitución fue ilegal debido a la ausencia de justa causa en derecho por haber sido absuelto el recurrido del delito de seducción basándose en la doctrina sentada por este Tribunal en el caso de *Cruz* v. *Garrido Morales*, 58 D.P.R. 653 (1941), en el sentido de que no hay que tomar en consideración el hecho de que el recurrente había sido absuelto en una causa criminal seguida en su contra por los mismos hechos que sirvieron de base a la destitución. A esos efectos dictaminó este Tribunal en dicho caso que "La acción criminal es independiente de la administrativa y no está la una supeditada a la otra. Sería atar de manos a todo funcionario nominador y privarle de las prerrogativas que la ley le reconoce en materia de destituciones, si las cortes estuvieran obligadas a ordenar la reposición de un empleado por el hecho de que otro tribunal le había absuelto en una acción criminal surgida de los mismos hechos que motivaron la destitución." El tribunal de instancia revocó el dictamen del Secretario por no considerar inmoral el hecho que un maestro de instrucción pública, siendo soltero, sostuviera relaciones sexuales con una mujer soltera, en ausencia de prueba de "que esas relaciones fueran públicas y notorias, que tuvieran relación con su posición como maestro, que se les conocieran viviendo en concubinato, que la escuela, la comunidad, los discípulos, compañeros maestros tuvieran conocimiento o se afectaran por la conducta del recurrente."

Se alega que el tribunal de instancia cometió error de derecho (1) al adoptar el anterior criterio sobre el concepto de "inmoralidad"; (2) al ignorar evidencia adicional que sostenía el cargo de inmoralidad formulado; y (3) al susti-

tuir su criterio por el del Secretario de Instrucción Pública, a pesar de que las conclusiones de éste están sostenidas por evidencia sustancial y no obstante existir una base racional en la prueba para la formulación de dichas conclusiones.

La destitución en este caso fue decretada de acuerdo con las disposiciones del artículo 5 de la Ley Núm. 94 de 21 de junio de 1955 y el artículo 5 de la Ley Núm. 312 de 15 de mayo de 1938, según ha sido enmendada por la Ley Núm. 6 de 24 de julio de 1952; la apelación al Tribunal Superior, se interpuso bajo el artículo 13 de la referida Ley Núm. 94 de 1955—18 L.P.R.A. secs. 264, 217 y 272. (¹)  ■

---

(¹) El artículo 5 de la referida Ley Núm. 94—18 L.P.R.A. sec. 264— dispone en parte lo siguiente:

"Los candidatos a certificados de maestro deben reunir los siguientes requisitos generales:

(1) .     .     .     .     .     .     .

(2) Tener conducta moral intachable."

El artículo 5 de la citada Ley Núm. 312—18 L.P.R.A. sec. 217 lee así:

"Los maestros permanentes sólo podrán ser suspendidos o separados de sus cargos por justa causa, según lo dispuesto en y mediante procedimiento prescrito por la Ley Escolar Compilada y los reglamentos del Departamento de Instrucción Pública; Disponiéndose, sin embargo, que en los casos de inmoralidad o incapacidad física o mental dichos maestros serán suspendidos sumariamente hasta tanto se celebre la vista del caso."

El artículo 13 de la mencionada Ley Núm. 94—18 L.P.R.A. sec. 272 provee:

"El maestro afectado por la decisión del Secretario de Instrucción Pública en cualquiera de los casos a que se refiere la sección anterior, tendrá derecho a establecer recurso de apelación ante el Tribunal Superior dentro de un plazo de 15 días a contar de la fecha en que el Secretario de Instrucción Pública le haya comunicado la resolución cancelándole el certificado. Dicha apelación se tramitará radicando en la secretaría del antes mencionado Tribunal un escrito conteniendo los fundamentos de hecho y de derecho en que basa el apelante su recurso. Este escrito será notificado al Secretario de Instrucción Pública en la forma que el Tribunal dispusiere y el Secretario lo contestará dentro de los 30 días subsiguientes a la fecha de tal notificación. Radicada la contestación, el tribunal fijará una fecha dentro de los 30 días subsiguientes a la radicación, para la vista del caso; y en este acto el Secretario ofrecerá la prueba en apoyo de su resolución, y el apelante la suya, si la tuviere o fuere necesaria. Será deber del Tribunal Superior que conozca del caso dictar sentencia no más tarde del vigésimo día de haberse celebrado la vista."

Provee el artículo 13 de la citada Ley Núm. 94 que con motivo de dicha apelación se fijará vista del caso en la cual las partes ofrecerán la prueba que tuvieren en apoyo de sus contenciones. No obstante esta disposición, que es de la naturaleza de un juicio *de novo*, alega el Procurador General que dicha ley debe interpretarse en el sentido de proveer para una revisión limitada de cuestiones de derecho y no un juicio *de novo*, pues el poder de destitución que le confiere la ley al Secretario de Instrucción Pública es una función de naturaleza ejecutiva(2) y, por lo tanto, debe estar sujeta sólo a una revisión limitada. *Sellin* v. *City of Duluth*, 80 N.W.2d 67 (Minn. 1956) ; *City of Meridian* v. *Davidson*, 53 So.2d 48 (Miss. 1951) ; *Peterson* v. *Livestock Commission*, 181 P.2d 152 (Mont. 1947) ; *City of Jackson* v. *McLeod*, 24 So.2d 319 (Miss. 1946) ; *State Board of Medical Regulation and Examination* v. *Scherer*, 46 N.E.2d 602 (Ind. 1943) ; *De Mond* v. *Liquor Control Commission*, 30 A.2d 547 (Conn. 1943). El comentarista K.C. Davis resume la doctrina de estos casos así:

"Las disposiciones estatutorias con respecto a revisión *de novo* son inconstitucionales si la acción administrativa no es de naturaleza judicial, porque la teoría de la separación de los poderes impide que las cortes realicen funciones que no son judiciales. Las cortes estatales, sin embargo, a menudo evitan la inconstitucionalidad interpretando tales disposiciones en el sentido de proveer una revisión limitada, aun cuando las disposiciones son bien claras en proveer una revisión *de novo*." 4 Davis, *Administrative Law Treatise*, sec. 29.11, p. 188.

En Puerto Rico, sin embargo, hemos seguido la doctrina de que la revisión judicial limitada en los casos que venimos discutiendo procede a menos que el estatuto provea expresamente para un juicio *de novo* que es lo que en efecto se provee en el caso ante nos. *López* v. *Muñoz, Gobernador*, 80 D.P.R.

---

(2) En 22 Iowa L. Rev. 162 se anotan numerosos casos en que se ha resuelto que la función de destituir a un maestro es una función ejecutiva sujeta a revisión judicial sólo por abuso de discreción.

4, 11 (1957; *Rivera* v. *Benítez, Rector,* 73 D.P.R. 377 (1952); *Ledesma, Admor.* v. *Tribunal de Distrito,* 73 D.P.R. 396 (1952); *Marín* v. *Pagán,* 52 D.P.R. 966 (1938); *In Re: Ortiz* v. *Venegas,* 43 D.P.R. 390 (1932); *Gutiérrez Vélez* v. *Monclova,* 39 D.P.R. 911 (1929); y *Coll* v. *Todd, Alcalde,* 35 D.P.R. 625 (1926).

La prueba presentada en la vista administrativa no tan sólo demostró que el recurrido tenía relaciones carnales con la joven en cuestión sino que tales relaciones transcendieron a otras personas (T.E. 32); que la joven perjudicada se querelló ante el Juez Torres Rodríguez, de Yauco, (T.E. 162) y éste envió una citación al recurrido quien al comparecer ante el juez prometió que se casaría con la referida joven (T.E. 40); que el recurrido trató de que a dicha joven se le practicase un aborto ilegal (T.E. 45, 46, 109). Otro hecho que indudablemente dio notoriedad a las relaciones existentes entre la joven perjudicada y el recurrido fue la radicación de una acusación por seducción contra éste, el nacimiento de un hijo a dicha joven y la radicación de una denuncia por abandono de menores contra el recurrido (T.E. 160–163). La prueba en cuanto a la reputación de la perjudicada fue contradictoria, dándole el comité investigador crédito a la del recurrente al efecto de que la perjudicada "era una joven conceptuada como casta y pura y con buena reputación en la comunidad de Guánica."

Analicemos los errores señalados por el recurrente a la luz de la anterior exposición del derecho y del precedente resumen de la prueba.

1–2. El tribunal de instancia llegó a la conclusión que el recurrido sostuvo relaciones sexuales con la perjudicada pero que la prueba indicó que estas relaciones no fueron públicas y notorias y que por lo tanto el recurrido no es culpable de conducta inmoral por el hecho aislado que se considera probado, o sea, por haber tenido relaciones sexuales con la perjudicada. La legislación en vigor impone como requisito para ameritar un certificado de maestro que el can-

didato tenga conducta moral intachable y, autoriza la separación de un maestro de su cargo por razón de inmoralidad. El cargo de maestro en la sociedad es un sacerdocio que exige de la persona que lo ejerce una conducta, dentro y fuera de la escuela, de absoluta rectitud, "intachable", libre de sospecha. Debe ser así, ya que el maestro no tan sólo imparte enseñanza a sus discípulos, sino que contribuye sustancialmente a forjar su carácter y sus hábitos y, en sus relaciones con éstos, les sirve de faro, de guía, de ejemplo.

Se entiende por inmoralidad todos aquellos actos o prácticas reñidos con los principios establecidos por consentimiento común con el fin de lograr la decencia, el buen orden y una conducta personal correcta. Por consiguiente, es inmoral todo lo que es hostil al bienestar del público en general y contrario a la moral; no se limita a cuestiones sexuales pues puede incluir aquella conducta que conflige con la rectitud o que es indicativa de corrupción, indecencia, depravación, de actitud licenciosa; o aquella conducta deliberada, flagrante y desvergonzada indicativa de indiferencia moral hacia la opinión de los miembros respetables de una comunidad; o la actitud desconsiderada con respecto al buen orden y al bienestar público. *Orloff* v. *Los Angeles Turf Club*, 227 P.2d 449 (Cal. 1951); *Paust* v. *Georgian*, 179 N.W. 735 (Minn. 1920). Lo cierto es que a ciertos empleados públicos tales como el ingeniero sanitario, el oficial de policía y el maestro, se les impone, debido a la naturaleza de sus obligaciones, normas de conducta que no tienen equivalencia en la empresa privada. En términos de moralidad, el maestro debe tratar de ser un modelo de persona moral, esto es, debe guardarse de dar un ejemplo que induzca al niño a adquirir malos hábitos y, además, debe demostrar lo que significa dedicarse positivamente a mejorar la actitud y la conducta de sus semejantes. O Glem Stahl, *Public Administration Service Ethics in a Democracy*, Cap. 17; W. A. Saucier, *Theory and Practice on the Elementary School*. El Código de Ética de la Asociación de Maestros, enmendado y aprobado en la

Asamblea de diciembre de 1947, provee en su introducción que el maestro "(2) debe observar una conducta intachable de modo que sirva de ejemplo a sus discípulos", y en su Sección 2 dispone que "Los maestros respetarán las sanas costumbres o tradiciones de la comunidad en que trabajan y se sujetarán a las normas morales establecidas por la sociedad puertorriqueña". (³) ▮

En *Tracy* v. *School Dist., No. 22, Sheridan County*, 243 P.2d 932 (Wyo. 1952), se resolvió que una carta imputándole a un maestro el cargo de beber dentro de los límites de la escuela y de dar bebida a discípulos se refería a bebidas intoxicantes y constituía aviso suficiente al maestro de los fundamentos para su destitución. La Corte en este caso dijo, citando de la obra *The Law and Public Education*, de Hamilton y Mort, que "La relación peculiar que existe entre el maestro y sus discípulos es tal que es muy importante que el carácter de aquél sea irreprochable. Está establecido, por

---

(³) El Código de Ética aprobado por la Junta de Directores de la Asociación de Maestros el 25 de abril de 1959 por delegación expresa de la Asamblea de dicha Asociación celebrada durante los días 28 y 29 de diciembre de 1958 dispone en parte lo siguiente:

"La profesión magisterial es la llamada a servir de guía y orientación a niños, jóvenes y adultos. Su primera obligación, y su deber cristiano consiste en impartir conocimientos, desarrollar destrezas, cultivar la mente, refinar el espíritu y alimentar el alma de los educandos, preparar ciudadanos religiosos, útiles a la sociedad y a si mismos y que puedan sentirse felices de disfrutar de los beneficios y asumir los deberes que se derivan de un sistema de vida sujeto a normas democráticas.

La grandeza de un país descansa en la educación, la independencia económica, el sentido de responsabilidad y sacrificio, la religiosidad y fortaleza espiritual y moral de sus individuos." Postulado I.

"La profesión magisterial ocupa en la sociedad un puesto de prestigio y confiabilidad que envuelve tanto la vida privada del maestro como las relaciones entre la escuela y la comunidad. La labor educativa es más efectiva cuando estas relaciones son cordiales y se basan en la crítica constructiva y el deseo de cooperación.

Para cumplir con este postulado, el maestro debe:

1. Respetar las sanas costumbres y tradiciones de la comunidad en que trabaja y tratar de adaptarse a las normas razonables de conducta aceptadas como buenas por la sociedad puertorriqueña." Postulado III.

lo tanto, que puede destituirse a un maestro por inmoralidad o mala conducta. La Corte de Apelaciones de Kentucky ha dicho que tanto los padres como los alumnos consideran al maestro como una persona ejemplar cuya línea de conducta debe seguirse por sus discípulos, y la ley por implicación necesaria exige que el maestro no tenga una conducta que invite a crítica y sospecha de inmoralidad. *Gover v. Stovall, et. al.*, 237 Ky. 172, 35 S.W.2d 24 (Ky. 1931). Aun en el caso de cargos o reputación de inmoralidad, aunque no estén sostenidos por prueba plena, en ciertos casos pueden ser causa suficiente para destituir a un maestro. Es esencial para la mayor utilidad del maestro en la escuela que éste tenga no tan sólo buen carácter sino que goce de buena reputación."

En *Appeal of Batrus*, 26 A.2d 121 (Pa. 1942), se sostuvo la destitución de una maestra por dedicarse a la venta y distribución de bebidas de malta, obtener licencia de licores a su nombre, para así engañar a la Junta de Licencia de Licores que no hubiera expedido la misma a nombre del padre de la maestra, y no dar cuenta de todo esto, y por el contrario informar que ella no se dedicaba a negocio otro alguno, al solicitar la licencia de maestra, por constituir la enumeración de tales hechos una imputación de inmoralidad. La Corte se expresó como sigue: "Creemos que es evidente que la conducta de un maestro, que subvierte aquellas normas de rectitud moral que la ley establece tanto para conducta gubernamental como social, no es conducente al mantenimiento de la integridad del sistema escolar público." En *Horosko v. School District of Mount Pleasant Tp.*, 6 A.2d 866 (Pa. 1939), al sostener la destitución de una maestra por inmoralidad e incompetencia basado en que servía de cantinera en un "beer garden" del marido y, en presencia de sus discípulos, bebía cerveza, jugaba tragos a los dados con los clientes, y les mostraba cómo operar máquinas de jugar, la Corte dijo que "la inmoralidad no está esencialmente limitada a una desviación de la moral sexual; puede ser una línea de conducta que ofenda la moral de la comunidad

y que sea un mal ejemplo para los jóvenes cuyos ideales debe el maestro fomentar y elevar." En *Gilmer* v. *Stover*, 46 Dauph 257 (Pa. 1939), se determinó que el tener contacto carnal antes del matrimonio constituía un acto de inmoralidad en el caso de una maestra. ■

Nos parece claro que en el caso ante nos, el tribunal de instancia dejó de considerar prueba que aparece del récord ante el comité investigador demostrativa de que el recurrido no tan sólo había tenido relaciones carnales con la perjudicada en muchas ocasiones sino que tales relaciones se convirtieron en notorias y escandalosas debido a los procesos judiciales iniciados en contra del recurrido por el delito de seducción y por abandono de menores, por su promesa no cumplida de contraer matrimonio con la perjudicada y por haber tratado de inducirla a someterse a un tratamiento para abortar. Tales hechos demostraban a cabalidad que el recurrido carecía de la conducta moral intachable, de la reputación irreprochable tan esencial al ejercicio del magisterio, que exige el estatuto y por consiguiente, concluimos que el tribunal de instancia cometió los primeros dos errores señalados por el recurrente. ■

.3. Siendo la doctrina establecida por este Tribunal que la revisión judicial limitada en estos casos procede cuando el estatuto expresamente no provee para un juicio *de novo* y, habiéndose demostrado que el estatuto en este caso en efecto provee para un juicio *de novo*, podríamos resolver y resolvemos que la corte a quo no cometió el error de no limitarse a resolver que las conclusiones del Secretario de Instrucción Pública están sostenidas por evidencia sustancial.

*En vista de lo expuesto, debe revocarse la sentencia del tribunal de instancia en este caso y en su lugar dictarse otra sosteniendo la decisión del Secretario de Instrucción Pública destituyendo al recurrido como maestro de instrucción pública.*