Martin MILLS, Plaintiff,

v.

Burdette TOPPERT et al., Defendants.

Civ. A. P–2218.

United States District Court
S. D. Illinois, N. D.

July 18, 1960.

James C. Allen, Aledo, Ill., for plaintiff.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., Casper Murphy, Chicago, Ill., for defendants.

## 162

MERCER, Chief Judge.

Plaintiff filed this action under the provisions of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. §§ 1365–1367, to review a decision by defendant, Review Committee of Mercer County, Illinois, fixing plaintiff's wheat acreage allotments for 1959. The cause was filed in the Circuit Court of Mercer County, Illinois, and transferred to this court by order entered April 15, 1959. It comes before the court now upon defendant's motion for summary judgment.

Plaintiff is the owner of four farms in Mercer County, Illinois, upon each of which he raised wheat as one of his staple crops. Pertinent to this cause, he raised wheat upon each farm in each of the years 1954 and 1957. None was raised in 1955 and 1956. The ASC Committee [1] established wheat acreage allotments for each of plaintiff's farms for 1959 upon the basis of the 1954–1957 four year average acreage history pursuant to the applicable Agricultural Department Regulations. 23 F.R. 1672.

Plaintiff applied for a review of each allotment determination before the defendant Committee. After a hearing upon plaintiff's applications, defendant determined that the zero acreage figures for 1955 and 1956 should not have been considered by ASC, and fixed a new and greater acreage allotment for each of plaintiff's farms. Defendant's written determination as to each farm to that effect was mailed to plaintiff on September 2, 1958. On September 5, 1958, defendant caused a revised order as to each of the four farms to be mailed to plaintiff, in which errors included in the September 2 orders were corrected.

The Deputy Administrator for Production Adjustment of the Commodity Stabilization Service, United States Department of Agriculture, acting through the Illinois State ASC Office at Springfield, filed a written application with defendant's clerk to reopen the hearing.

There was some doubt in the evidence as to when that application was received by defendant's clerk, but the evidence supports defendant's finding that October 20, 1958, was the filing date.

Thereafter, a rehearing was held in a consolidated proceeding, and, on March 2, 1959, defendant issued its supplemental determination revoking the September 5, 1958, orders, and affirming and reinstating the lesser wheat acreage allotment for each farm as determined by ASC. Plaintiff filed this action to review the March 2, 1959, decision.

At the outset, plaintiff contends that defendant had no jurisdiction to enter the order under review because the Deputy Administrator's application to reopen the hearing was not timely filed. Section 711.25 of the Marketing Quota Review Regulations, 21 F.R. 9365, provides that a review committee, upon application made by the Deputy Administrator within 45 days from the date of mailing to the applicant a copy of any determination by such review committee, shall reopen the hearing with respect to such determination. Plaintiff argues that the 45 day period fixed by Section 711.25 for filing the application to reopen must be measured from September 2, 1958, the date of the original determination by defendant with respect to each of plaintiff's farms.

Defendant concluded that the 45 day period should be measured from the date of its revised orders, i. e., September 5, 1958, and that the application to reopen filed October 20, 1958, was timely filed. The conclusion is correct. Between September 2, 1958, and September 5, 1958, defendant determined that the acreage allotment stated in two of the four orders was erroneous. On the latter date, amended orders with respect to each of the four farms were mailed to plaintiff, together with a letter of notification that the amended orders superseded those of September 2nd. Then, and only then, was the original administration hearing

---

[1]. The abbreviations "ASC" and "ASC Committee," when used in this memorandum without other qualifying language, means the Mercer County, Illinois, Agricultural Stabilization and Conservation Committee.

concluded, subject to being reopened upon a proper application. Since no judicial decision is found which construes Section 711.25 with respect to the time factor, the court holds that time must be measured from the date of the final administrative order. Cf., Zimmern v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118. The application to reopen was filed within 45 days after the mailing of defendant's final orders and was, therefore, timely.

■ Review of the merits of the cause in this court is limited to questions of law if the findings of fact of the defendant committee are supported by substantial evidence. 7 U.S.C.A. § 1366; Crolley v. Tatton, 5 Cir., 249 F.2d 908, certiorari denied 356 U.S. 966, 78 S.Ct. 1005, 2 L.Ed.2d 1073; Review Committee, etc. v. Willey, 8 Cir., 275 F.2d 264; Smith Land Co. v. Christensen, 10 Cir., 148 F.2d 184.

■ The committee found that plaintiff did not plant wheat on any of his farms for harvest in 1955 and 1956; that, at all times pertinent to the hearing, plaintiff operated his farms as grain farms and that no change in that operation was proved; and that plaintiff had not voluntarily released to ASC any part of the 1955 wheat allotment for any of his farms as he claims to have done. Each of those findings is supported by substantial evidence upon the record as a whole and each is, therefore, binding upon this court.

The remaining question before the court is the question whether defendant's decision, based upon those findings, is in accordance with law.

Regulations issued by the Secretary of Agriculture governing 1959 wheat allotments required ASC to fix the base acreage for each farm by establishing a wheat acreage history for the farm, based upon the average acreage of wheat harvested thereon in the base years of 1954 to 1957, inclusive. 7 C.F.R. (1959 Supp.) 728.912 (m), 728.917(b). The acreage allotment for each farm was to be computed by applying a fractional multiplier established by the local ASC Committee to the base acreage so fixed unless the local committee should determine that one of the five exceptions specified in the regulation should require that one or more of the years in the 1954–1957 base period should be excluded from the computation, 7 C.F.R. (1959 Supp.) 728–917(c)(1).

The fourth exception to that regulation is the only one pertinent here. That exception provides that the historic average acreage may be revised where base period wheat acreage of a farm is "no longer representative because of a change in operation which results in a substantial change in the established crop-rotation system for the farm." Plaintiff testified that he did not plant wheat for harvest in 1955 and 1956 because he chose to plant oats in an effort to obtain a good legume seeding. He contends that that choice, then made, renders each of the years in question atypical of his farms' wheat acreage history, and brings those years within the quoted exception.[2]

The committee concluded and here contends that exception iv does not apply to plaintiff's situation. In so concluding the committee adopted the Secretary of Agriculture's interpretation of the exception as being applicable only to a situation involving a change in farm operation of such substantial nature that it would render the crop-rotation system to be followed in 1959 substantially different from that followed in the base period years.

■ Plaintiff principally contends that the exception to the regulation should be applied to eliminate the wheat crop history of each of his farms for the year 1955 and 1956 from the 1959 base-acreage computation because they represent a change in his typical wheat grow-

2. Defendant determined initially that the zero acreage figures for 1955 and 1956, would be excluded from the past acreage history computation, apparently applying exception iv of the regulation. The effect of that determination was to approximately double the average acreage figure and the 1959 acreage allotment fixed by ASC for each of plaintiff's farms.

ing history. If it be assumed that those years are atypical of plaintiff's customary wheat production, it was still not arbitrary for defendant to hold that the case does not reflect a "change in operation which results in a substantial change in the established crop-rotation system" for the farms. This case deals with complex statutes and regulations designed to meet complex economic situations. The specialized agency charged with the duty of implementing the statutory program is entrusted by Congress with power to issue and apply regulations necessary to make that program effective. A reviewing court should not substitute its views for those of the agency, unless the interpretation and application of the regulations in and to a particular case is so unreasonable, arbitrary or capricious that the court must conclude that the administrative action was unlawful. See: Review Committee, etc. v. Willey, 8 Cir., 275 F.2d 264, for an able and extensive analysis and discussion of the 1959 wheat regulations, as applied to a question closely parallel to the question here involved.

It was not arbitrary or unreasonable to interpret exception iv to the regulation as applicable only to changed farming practices of such extent that the 1959 crop-rotation system was substantially changed from that practiced in the base years of 1954–1957. It was not arbitrary to find and conclude here that plaintiff's crop-rotation system remained substantially unchanged, but reflected, only, a variation of acreage devoted to various small grains from year to year.

The point may be illustrated by using one of plaintiff's four farms as an example. Upon the farm designated by ASC records as C–53, plaintiff harvested 62 acres of wheat in 1954, none in 1955 and 1956, and 62 acres in 1957. Upon that four-year history, ASC found the historic average acreage of 31 which, when multiplied by the allotment multiplier for Mercer County of .743, gave plaintiff a wheat allotment for 1959 of 23 acres. It is apparent that plaintiff's

argument against the decision under review is not that his use of wheat in an established rotation is substantially changed for 1959, but that his wheat acreage allotment for that year should be comparable to the acres harvested and the practices followed by him in 1954 and 1957, excluding the practice which he chose to follow for reasons of husbandry in 1955 and 1956. The base-period, average acreage history for each of plaintiff's other farms is comparable to that above summarized for number C–53.

█ The term "crop-rotation system" employed in the Agricultural Adjustment Act of 1938, as Amended, and the 1959 wheat allotment regulations is not defined by the statute. To be meaningful in the context of the pertinent regulations, that term must be construed to relate to existing systems and practices in use upon a particular farm during the base-period. The Department of Agriculture has interpreted exception iv to require something more than a varying of the acreage of small grains from year to year on a particular farm before the average acreage history of that farm might be modified. Defendant adopted and applied that interpretation in this case.

█ Defendant further found that the historic average acreage determined for each of plaintiff's farms was in line with the average established for other farms in the same area which were similarly situated. The record discloses that there were other farmers in the same area who, like plaintiff, did not plant wheat for harvest in one or more of the base years, and who, like plaintiff, lost a substantial part of the wheat acreage to which they felt they should have been entitled under the regulations applicable to the 1959 crop. To support his contention that he was treated unfairly, plaintiff sought to show that his wheat acreage allotment for each farm was substantially lower and out of line with the acreage allotted to farms of similar size and location which had a history of growing wheat for harvest in each of the base years. Defendant concluded that plaintiff received

the same treatment as did other farmers who had a like, or similar, wheat acreage history. That conclusion is supported by the evidence and the findings, and the court is not at liberty to substitute its own judgment therefor, whatever that judgment might be.

No error is found in the defendant's decision which would require or permit this court to set that decision aside. The fact that plaintiff finds himself with a smaller allotment than would be his had he produced wheat in each of the base-period years, "that he finds himself at a comparative disadvantage, because of the past acreage factor, with certain other farmers of his locality having farms of comparable size, that the restriction is inconvenient and not to his liking, that he is unable to use to its full extent and without possible penalties the crop rotation scheme of his choice but may be required, instead, to utilize a rotation scheme less appealing to him, are natural but not illegal results of regulation imposed by the legislative process to fill a need which Congress has found to exist." Review Committee, etc. v. Willey, supra at page 275, of 275 F.2d.

"It is of the essence of regulation that it lays a restraining hand on the self-interest of the regulated and that advantages from the regulation commonly fall to others. The conflicts of economic interest between the regulated and those who advantage by it are wisely left under our system to resolution by the Congress under its more flexible and responsible legislative process. Such conflicts rarely lend themselves to judicial determination. And with the wisdom, workability, or fairness, of the plan of regulation we have nothing to do." Wickard v. Filburn, 317 U.S. 111, 129, 63 S.Ct. 82, 91, 87 L.Ed. 122.

The court cannot say that the interpretation or application of the regulation to plaintiff's farms by defendant was illegal under the circumstances of this cause. The decision of defendant is, therefore, affirmed, plaintiff to pay the costs of this suit.