**Arthur P. SLAUGHTER, Plaintiff,**

v.

**W. W. ELKINS et al., Members of the U. S. Agricultural Stabilization and Conservation Service Review Committee, Defendants.**

**No. 64–C–80–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Nov. 3, 1966.

H. E. Widener, Jr., Widener, Widener & Frackelton, Bristol, Va., Frank L. Slaughter, Bristol, Tenn., for plaintiff.

Robert S. Irons, James C. Roberson, Asst. U. S. Attys., Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendants.

## OPINION

MICHIE, District Judge.

This case arises on a complaint in the nature of a bill in equity filed in this court pursuant to 7 U.S.C.A. § 1365 (1964 ed.) to review a decision as to petitioner's 1964 burley tobacco allotment rendered by the Review Committee for Area Four of the State of Virginia Agricultural Stabilization Conservation Committee (hereinafter referred to as the Review Committee).

On April 2, 1963 petitioner, Arthur P. Slaughter, purchased the greater portion of a farm belonging to Carl Fleenor. Fleenor retained approximately 1.80 acres of the farm which he subsequently conveyed to his son-in-law, Robert Able, in July, 1963. The 1963 tobacco allotment on the entire Fleenor farm was 1.35 acres. Subsequent to Slaughter's purchase, this entire allotment was transferred to Slaughter's name without objection and he produced and sold the entire 1963 crop in his own name. In 1964 there was a county-wide reduction of 10% on all burley tobacco allotments. This resulted in a total allotment of 1.22 acres for what had once been the Fleenor farm.

After Fleenor's death in August, 1963, Able applied to the Washington County A.F.C. Committee (hereinafter referred to as the County Committee) for part of the allotment. In making its subsequent reconstitution based on the cropland method, the County Committee had cause to consider a 5.24 acre tract on Slaughter's portion of the original farm. Slaughter contended, and introduced evidence in support thereof, that this parcel of land came within the definition of cropland and should therefore be considered in determining the percentage of the total allotment to which he was entitled.[1] The County Committee found to the contrary and was affirmed by the Review Committee at a *de novo* hearing. The Review Committee stated in its conclusion "that there was no positive evidence * * * that any crop was grown on the field in question [the 5.24 acre tract] during the years 1958–62."[2]

---

1. Under the cropland method of reconstituting a divided tract, each new tract is awarded an allotment in that proportion which the "cropland" acreage in that new tract bears to the "cropland" acreage of the parent farm. 7 C.F.R. § 719.8(b) (1965 rev.)

2. Under the regulations in effect prior to September 26, 1964 cropland was defined in part as land:

 which the County Committee determines: (1) was tilled in at least one of the five calendar years immediately preceding the crop year for which the determination is being made; * * *. 27 F.R. 6482 (July 10, 1962)

Slaughter seeks review in this court claiming that his 1964 burley tobacco allotment was inadequate because his farm was improperly constituted. He alleges that the decisions of the County Committee and the Review Committee were not supported by the evidence and were not in accordance with the applicable regulations promulgated by the Department of Agriculture (hereinafter referred to as the Department).

Both the County Committee and the Review Committee heard evidence under, and, in arriving at their respective decisions, followed the regulations which were then in effect and which were superseded on September 26, 1964.

The County Committee considered 1963 as the crop year in question for the purpose of applying the cropland definition then in force. It considered itself to be so directed by § 719.9(a) of the pre-1964 regulations which read:

> All reconstitutions * * * to the extent practicable shall be based on facts and conditions existing at the time the change resulting in the reconstitution occurred rather than on facts and conditions existing at the time the actual reconstitution action is taken by the County Committee. 27 F.R. 6482 (July 10, 1962)

While the County Committee looked to 1963 as the time of the event requiring the reconstitution, the proceeding was solely one involving 1964 and subsequent crop years. The record shows that no question was raised as to Slaughter's taking the entire 1963 allotment of 1.35 acres in his own name. The government concedes in its brief that facts as to the 1963 allotment are immaterial and that it is the allotment for the 1964 crop year which is in issue.

The decision of the Review Committee was rendered September 24, 1964, and did not become final until 45 days

thereafter.[3] Furthermore, § 365 of the Agricultural Act of 1938 as amended (§ 1365, 7 U.S.C.A. 1964 ed.) allows the filing of a petition for judicial review within 15 days of the mailing of notice of the determination.

Two days after the decision by the Review Committee, well before the decision had become final and before the statutory time for appeal had run, on September 26, 1964, a new set of regulations promulgated by the Department became effective upon their publication in the Federal Register. See 29 F.R. 13370 Sept. 26, 1964. 7 C.F.R. § 719.1 et seq. (1965 Rev.)

The effect of the new regulations, *inter alia*, was to change the definition of cropland.

> (i) to allow more latitude in determining what land is cropland and (ii) *to eliminate the "waiting period for classifying cropland to non-cropland* (one exception is tree planting which would be re-classified as non-cropland the year following planting), * * *."

7 C.F.R. § 719.1(a) (3) (1965 Rev.) (Emphasis added)

The new regulations define cropland to include land which:

> (1) Is currently being tilled for the production of a crop for harvest.
>
> *   *   *   *   *   *
>
> (3) Is suitable for crop production and although not currently tilled it can be established that the land has been tilled in a prior year.

7 C.F.R. § 719.2(f) (1965 Rev.)

The old "cropland" definition which was applied by the Review Committee is set forth in an earlier footnote.[4]

The new regulations contain the following "applicability provision":

> (b) *Applicability.* The regulations in this part are applicable to constitu-

---

3. Section 711.24 states *inter alia*
   The determination of the Review Committee does not become final until the maximum period for reopening of hearing under § 711.25 has expired without any reopening; * * *.

Section 711.25 grants the Secretary the right to reopen within 45 days of the date of determination. 7 C.F.R. §§ 711.24, 25 (1965 Rev.)

4. See Footnote 2, supra.

tions and reconstitutions involving 1964 and subsequent crop years for all programs except sugar.

7 C.F.R. § 719.1(b) (1965 Rev.)

And they provide further:

(a) *Farms constituted under prior regulations.* Land which has been properly constituted under the regulations in effect prior to the effective date of this paragraph [Sept. 26, 1964] shall remain so constituted until a reconstitution is required under paragraph (d) of this section.

7 C.F.R. § 719.3 (1965 Rev.)

As the record indicates that only the 1964 and not the 1963 allotment is in dispute, I conclude that this is a "reconstitution involving 1964 and subsequent crop years". The issue before me thus resolves itself to whether the new regulations which became effective before the decision of the Review Committee had become final and before petitioner's time to appeal to this court had run are applicable to this case.

▓▓ When reviewing an administrative decision, the district court is empowered to consider whether the agency below applied the correct law. 7 U.S.C.A. § 1366 (1964 ed.); Simpson v. Laprade, 248 F.Supp. 399 (W.D.Va.1965); Clifton v. Celebrezze, 228 F.Supp. 251 (N.D.Tex. 1964). Likewise, here, where the Department has stated that the new regulations apply to reconstitutions involving the 1964 crop year and where this reconstitution does involve the 1964 crop year, it is proper for this court, within the limits of its power of review, to consider the applicability of the new regulations and, if necessary, remand the matter to the Review Committee to consider their effect on its factual findings. Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966).

▓ Any consideration of applicability must begin with the regulations' own "applicability" provision, § 719(1)(b),

mentioned above. In this provision appears the clear intent that they shall apply to all reconstitutions involving 1964. Absent this clear statement of intent it is certain that the regulations could not apply to reconstitutions effected prior to their effective date, September 26, 1964. Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). It has been urged that the department could not have intended retrospective application as this would allow the re-opening of all 1964 reconstitutions completed under the old regulations. I would find merit in this argument but for the "prior reconstitution" provision of the new regulations which reads:

(a) *Farms constituted under prior regulations.* Land which has been properly constituted under the regulations in effect prior to the effective date of this paragraph shall remain so constituted until a reconstitution is required under paragraph (d) of this section.

Read together, as they must be, the "applicability provision" and the "prior reconstitution" provision evidence a sensible administrative scheme. Briefly stated, the second mentioned provision qualifies the first so that as to those reconstitutions involving the 1964 crop year which have been properly effected and which had become final as of September 26, 1964, the new regulations do not apply. However, as to those reconstitutions involving the 1964 crop year which were pending or which had not become final as of September 26, 1964, and as to those which had been improperly effected, the new regulations do apply.

▓ As this reconstitution is covered by the "applicability" provision in that it involves the 1964 crop year, and as it did not become final until well after the effective date of the new regulations, I find that the 1964 regulations did apply. In its essence, this is not a case of retrospective application, but rather application of the new rules to an incomplete reconstitution.[5]

---

5. I find the principle enunciated in Mills v. Toppert, 185 F.Supp. 160 (S.D.Ill.

1960) inapplicable. In that case it was held that the specialized agency has

Here, as did the court in Burlington Truck Lines v. United States, supra, I find that the new regulations made substantial changes in the procedure for making a reconstitution and "so changed the complexion of the case" that as an equity court I should remand the case to the Review Committee for further consideration in light of the changed conditions. This is evidenced by the findings of the Review Committee "that there was no positive evidence * * * that any crop was grown on the field in question (5.24 acres) during the years 1958 through 1962." However, under the new regulations the committee would look to the year the need for reconstitution arose, 1963,[6] to determine whether the land in question was "currently being tilled for the production of a crop for harvest." [7] C.F.R. § 719.2(f) (1) (1965 Rev.). Thus, the waiting period of one year would be eliminated for classifying this 5.24 acres as cropland.[7]

■■■ A second and equally forceful reason requires me to order a remand to the Review Committee. It is accepted that a change in the applicable law which takes place after an order appealed from has been entered must nonetheless

be given its appropriate effect by the appellate court. In re Moneys Deposited, etc., 243 F.2d 443 (3d Cir. 1957). However, Peterson v. Livestock Commission, 120 Mont. 140, 181 P.2d 152 (1947) indicates that a court reviewing an administrative determination may not take account of a subsequent change in the law but must view the correctness of the determination solely in the light of the law in effect at the time the determination was made.

I am of the opinion that the Peterson rationale should not be applied where an administrative body, such as the Review Committee in this case, has exercised its adjudicatory power. The agency, acting in the capacity of a court, must be given similar treatment; and thus, except where vested rights have intervened, a reviewing court should be empowered to employ the most recent law. Relevant is the recent decision of the Court of Appeals for the Fourth Circuit in Frye v. Celebrezze, 365 F.2d 865, at p. 867 (decided Aug. 29, 1966) in which the court states:

No good reason appears why the 1965 amendment [effective after the date of the Secretary's order] should not be applied to a pending case for judi-

---

peculiar competence to determine the applicability of the *substance* of an acreage regulation to a particular set of facts. This case, on the other hand, requires a decision between two competing sets of regulations as to applicability in terms of time, a matter peculiarly within the power of a reviewing court.

6. Section 719.7(a) was amended in part to read:

Farms shall be reconstituted as soon as it is determined that the land areas are not properly constituted and, to the extent practicable, shall be based on facts and conditions existing at the time the change requiring the reconstitution occurred. 30 F.R. 3855 (March 25, 1965).

It is important to note the wording of this amended section 719.1(a) in that it only requires the reconstitution to be based upon "facts and conditions" existing at the time the change of ownership occurred. There is nothing to indicate any intention on the part of Congress or the Department to apply regula-

tions which, while in force at the date of change of ownership, have been thereafter superseded. To the contrary, the Department has emphasized in section 719.1(a) (3) of the current regulations that the cropland definition was changed to allow "more latitude" in its determination and to "eliminate" the one year "waiting period" for reclassification of non-cropland to cropland. In effect the Department has liberalized its regulations and can hardly be heard to say now that it desires an opposite result, i. e., that it desires the 1963 regulations to be applied solely because the change of ownership was effected then.

7. The prior regulations required a showing that the land was tilled in at least one of the five calendar years immediately preceding the crop year in question. Under the new regulations the inquiry shifts to the current year, i. e., 1963 and there is evidence that a crop of oats was planted on the 5.24 acre tract in question in 1963.

cial review of an administrative determination. In a supplemental memorandum, the Secretary agrees that it does. He suggests the appropriateness of a remand.

Similarly, where petitioner Slaughter has properly appealed from an administrative adjudication and where his rights may be affected by a subsequent change in the law, I conclude that a remand to the administrative body with directions that it reconsider its findings in the light of the superseding law is the best disposition.

For the reasons stated, this cause is remanded to the Area Four Review Committee for further proceedings under 7 C.F.R. § 719 in accordance with this opinion.