James M. TUNNELL, Jr., Mildred S. Tunnell, Robert W. Tunnell, Eolyne K. Tunnell, Partners, t/a Indian Landing, and Kings Cliffe Mobile Homes, Inc. and Dupont Mobile Home Sales, Inc., corporations of the State of Delaware, Appellants,

v.

Loren H. FRYE, James L. Crothers, Harold L. Jacobs, Wallace F. McFaul, Jr., A. J. Maitland, Wilbur S. Shockley and William C. Henry, constituting the Water and Air Resources Commission of the State of Delaware, Appellees.

Superior Court of Delaware.

Sussex County.

March 3, 1969.

James M. Tunnell, Jr., Wilmington, for appellants.

N. Maxson Terry, Jr., Dover, for appellees.

## OPINION

O'HORA, Judge.

Appellants, owners of a mobile home park in Sussex County, Delaware (the "owners") appeal from a June 21, 1968 decision of the Water and Air Resources Commission ("W.A.R.") [1] which granted owners permits to install septic tanks on all except thirty-two of their one hundred and four park lots.

The owners contend that W.A.R. lacked jurisdiction to deny permits as to any of the lots. They rely on 7 Del.C. § 6303 and 16 Del.C. § 1506 as it existed at the time of the hearing and partial denial of their application. 7 Del.C. § 6303 which is part of the 1966 Water and Air Resources Act

---

1. The Water and Air Resources Commission was created under the 1966 Water and Air Resources Act, 55 Laws of Delaware, Chap. 442, which became effective on July 1, 1966.

(the "Act") provides in pertinent part as follows:

"§ 6303. Duties and powers

The Commission, in regulating water pollution pursuant to this chapter, may

(4) issue general orders, and adopt rules and regulations applicable throughout the State for the installation, use and operation of systems, methods, and means for controlling the pollution of the waters of the State by sewage, industrial wastes, refuse, and other wastes, after notice and hearing as provided by section 6006 of this title;

(6) make investigations and inspections to insure compliance with any general or special orders, rules and regulations which the Commission may issue. In the exercise of this power the Commission may require the submission and approval of plans for the installation of systems and devices for handling, treating, or disposing of sewage, industrial, and other wastes; and"

16 Del.C. § 1506 at the time of the action appealed provided as follows:

"§ 1506. Plans for construction or alterations

All plans for the construction or alteration of sewerage or water supply system shall be submitted in duplicate to the Water and Air Resources Commission for its approval before construction shall be started upon same. The Water and Air Resources Commission shall promptly forward one copy of the plans to the State Board of Health for approval. The Water and Air Resources Commission shall not grant its approval of the plans if the State Board of Health disapproves the plans within 30 days, and cites its reason for disapproval."

The owners argue that before W.A.R. could utilize the provisions of the Act to deny sewerage system installation applications,[2] it was required to promulgate rules and regulations under § 6303(4). Its failure to adopt such rules and regulations up to and including the time of the hearing and denial[3] allegedly precluded W.A.R. from proceeding under the Act.

Since W.A.R. could not have been proceeding under the Act, the owners assert that it must have been relying on 16 Del.C. § 1506 when it denied the application as to the thirty-two lots. The owners, however, say that W.A.R.'s jurisdiction under § 1506 was impliedly limited to septic tanks to be installed in any incorporated town or within one mile of the water supply of any such town. Since it is conceded that their park is not located in any incorporated town nor within one mile of the water supply thereof, the owners conclude that their application could likewise not have been rightfully denied under § 1506.

In defense of the propriety of its action W.A.R. points out that § 1506 was amended effective June 28, 1968 and that in conjunction with this change, a new § 6307, also effective June 28, 1968, was added to Title 7. The amendment to § 1506 deleted the words "sewerage or" from line 1 of that section. The new § 6307 which withdrew from the State Board of Health jurisdiction over the approval of plans for the construction or alteration of sewerage systems and vested such authority solely in W.A.R. provides as follows:

"§ 6307. Submission of construction plans

All plans for the construction of alteration of sewage systems shall be sub-

---

2. Though the owners do not make reference to the specific section of the Act which gave W.A.R. the power to grant or deny applications, it would appear that they are referring to § 6303(6) since, at the time of the action appealed, this was the only section of the Act which gave W.A.R. such a power.

3. Rules and regulations were later adopted and became effective October 1, 1968.

mitted to the Water and Air Resources Commission for its approval before construction shall be started upon same. The Water and Air Resources Commission is the only agency of this State vested with the authority to require such approval prior to construction notwithstanding any other statute or rule or regulation to the contrary."

Relying on § 6307 W.A.R. argues that it has state wide jurisdiction to act on applications without first promulgating rules and regulations. Tacitly conceding that it perhaps cannot avail itself of a statute which was not in effect at the time of its contested decision, W.A.R. further contends that § 6303, which was in effect at the time of the action appealed, gave it an identical power. Thus W.A.R. says that the word "may" in § 6303 makes the adoption of rules and regulations discretionary and not mandatory. Consequently, it is asserted that this section also empowered W.A.R. to exercise its jurisdiction under the Act even absent the adoption of rules and regulations. Lastly, W.A.R. says that its action was valid even if done pursuant to § 1506 since the literal language of that section contains no jurisdictional limitation.

The owners have moved for summary judgment and this is the decision thereon.

The first question which must be answered is whether the law in effect at the time of W.A.R.'s action, or that presently in effect, should be applied by the Court to determine the propriety of this administrative agency's decision.

■ At first reading the leading cases dealing with this issue appear irreconcilable. Compare Frye v. Celebrezze, 365 F. 2d 865 (4th Cir. 1966) and Slaughter v. Elkins, 260 F.Supp. 835 (D.C.Va.1966) with Peterson v. Livestock Commission, 120 Mont. 140, 181 P.2d 152 (1947). Common guidelines, however, are discernible. Thus where a statute has been newly enacted or amended pending an appeal from an administrative decision and where that decision or the grounds used in arriving thereat are contrary to the terms of the new or amended statute, the Court should judge the agency's action according to the new or amended law. Frye v. Celebrezze, supra, and Slaughter v. Elkins, supra. On the other hand, the new or amended law should not be applied by the reviewing Court where the agency seeks to rely on it to justify action taken before the change. Peterson v. Livestock Commission, supra.

■ The instant case appears to fall within the latter category and the Court must, therefore, apply the law in effect at the time of W.A.R.'s decision. Consequently § 6307 must be disregarded for purposes of this appeal.

■ Section 6303(4), as W.A.R. contends, does not require that rules and regulations be adopted. However, regard must be had to § 6303(6) to determine what effect, if any, the failure to promulgate rules and regulations had on W.A.R.'s power to grant or deny applications. A fair reading of this latter section makes it abundantly clear that the adoption of rules and regulations was intended by the Legislature to be a condition precedent to the rightful exercise by W.A.R. of the power to grant or deny applications. The power of approval was a tool given W.A.R. to help it insure compliance with any rules and regulations it may have promulgated. If, as was the case here, no rules and regulations were in existence at the time of W.A.R.'s action, there was nothing to which W.A.R. could require the plans to conform. It follows, therefore, that W.A.R., having failed to promulgate rules and regulations until after it acted on the owners' application, cannot rely on the Act to justify its decision.

■ As W.A.R. cannot avail itself of the Act to justify its action, the Court must next determine whether the permits could have been rightfully denied under § 1506. Section 1506, as noted by W.A.R., contains no jurisdictional limitation in and of itself. This section, however, must be read in the context of the entire chapter of

the Code in which it is located (Chapter 15, Title 16). Such a reading emphasizes that jurisdiction under this section was confined to and intended to apply only to sewage systems located within the limits of all incorporated towns and any place within one mile of the water supply of any such town. Here, as mentioned, it has been conceded that the owners' park is not within any incorporated town nor within one mile of the water supply thereof. The inevitable conclusion follows that any attempt by W.A.R. to deny the owners' permits under the provisions of § 1506 was violative of the jurisdictional limitation of that section and hence void.

Since W.A.R. could not have lawfully denied the owners' application, the motion for summary judgment, on behalf of the owners, should be granted.

It is so ordered.